J. A. KIDD and SOUTHERN SURETY COMPANY, a corporation, *Plaintiffs in Error,* vs. CITY OF JACKSONVILLE, for use of HIRSCH LUMBER COMPANY, a corporation. *Defendant in Error.*

143 So. 307.

Division A.

Opinion filed August 2, 1932.

*Giles J. Patterson* for Plaintiffs in Error;

*Marks, Marks, Holt, Gray & Yates,* for Defendant in Error.

BUFORD C.J.—This is the third appearance of this case in this court. Two opinions have been heretofore written. See Kidd vs. City of Jacksonville, 91 Fla. 380, 107 Sou. 677; and Kidd vs. City of Jacksonville, 97 Fla. 296, 120 Sou. 556.

The laws of the case as applicable to the matters presented now for review was stated in the opinion pre-

pared for the Court by Mr. Justice Ellis, 97 Fla. 296, 120 Sou. 556, and it only remains for us to apply the law as therein stated to the facts as they were developed upon the trial.

Kidd by contract undertook to construct municipal docks for the City of Jacksonville. Southern Surety Company became surety on Kidd's bond for the faithful performance of his contract, and, amongst other things, insured the payment by Kidd for material used in the construction under Kidd's contract with the City. Kidd purchased a lot of lumber, which will be hereinafter mentioned, from the plaintiff, which lumber was placed on the ground for use in the construction of the municipal docks under the contract. Kidd failed to carry out his contract. After having used a large portion of the lumber and having paid for a large part that was used he became unable to carry out his contract and thereupon abandoned the construction. After abandoning the construction, Kidd sold to one Hillyer the lumber remaining on the ground. After the sale, but before purchase price was paid, Kidd went into bankruptcy and his Trustee in bankruptcy collected from Hillyer the amount of the purchase price due to Kidd from the sale of the lumber by Kidd to Hillyer. Hillyer then entered into a contract to complete the construction of the dock. In the performance of this work Hillyer used a part of the lumber which he had purchased from Kidd.

The plaintiff sued Kidd and Southern Surety Company for the balance alleged to be due by Kidd to the plaintiff for the lumber sold by plaintiff to Kidd.

Judgment was in favor of the plaintiff against defendants jointly.

This case must be differentiated from the case of Glades County vs. Detroit Fidelity & Surety Co., 57 Fed. (2nd ed.) 449. In that case the material left on the

ground by the contractor was taken over by the county and by the county was applied to the finishing of the construction of the building. Thereby the county reduced the liability of the surety to the county in an amount equal to the value of the lumber and the surety thereby remained liable to the materialman for the value of the lumber thus taken over and used by the county. In this case the municipality did not take over the lumber and therefore the liability of the surety company under its bond to the city continued to exist for the entire cost necessary to complete the construction. This cost necessarily included the value of the lumber which would be needed in the completion of the construction and as the residue of the lumber was not placed in the building under the Kidd contract or under any condition by which the city took it over to apply on the Kidd contract, the surety company never became obligated to pay for such lumber.

If we were to hold that the surety company is liable to the materialman for this lumber we would thereby hold it to a double liability, one liability being to the municipality for the unfinished contract and the other liability being to the materialman for the value of the lumber diverted by the contractor to other uses than the prosecution of the work contracted for. In Kidd vs. City of Jacksonville, supra, it was said:

"Materialman, not city, must stand loss from contractor's diversion of materials to other uses than prosecution of work contracted for, by reason of faith imposed in customer; city having derived no benefit from use of materials."

When Kidd sold the lumber on the ground to a third party not in privity with him in any manner so far as the contract was concerned, he thereby diverted the material to other uses than the prosecution of the work contracted for and the purchaser was at liberty to use

that lumber in an independent contract of his own for the completion of the dock, or for any other purpose he saw fit. The city derived no benefit from the use of the material used by Hillyer. The city paid Hillyer for the construction accomplished by Hillyer, including the materials furnished by Hillyer, and no benefit flowed to the city by reason of Hillyer having used lumber that he purchased from Kidd. It would have been otherwise had the municipality taken over this lumber from Kidd and delivered it to Hillyer to be used in the prosecution of the work, thereby decreasing the necessities of Hillyer to furnish material and at the same time, and to the same extent, decreasing the amount by the amount of the value of the lumber which it was required to pay Hillyer. Under such a state of facts the case would be governed by the principles enunciated in Glades County, Fla., vs. Detroit Fidelity & Surety Co., supra.

It is contended by plaintiff in error that the plaintiff in error is entitled to credit for the amount paid by Kidd's Trustee to plaintiff, amounting to $5,127.02. That would be quite true if defendant surety company had been liable to defendant in error for the amount due by Kidd for the lumber which was not used under Kidd's contract in the construction of the building, but since the surety company did not become liable for any lumber except that which was used in the construction of the building under the Kidd contract it can claim no credit for the amount paid by Kidd's Trustee as proceeds of a sale by Kidd of lumber so diverted from use under the contract.

The aggregate foot board measure of lumber delivered to Kidd as shown by the invoices was 620,295 ft., but the bill of particulars shows that there was an error of 100 ft. in favor of Kidd in this, which left 620,194 ft. The aggregate invoiced value of the lumber at $41.75 per

thousand was $25,882.09. If we divide this total of invoices by the price per thousand to get the quantity of lumber the result is 619,906 ft., showing a shortage of 288 ft., which appears to have been lost in the calculation of individual invoices. This might easily occur by reason of dropping fractions.

As the plaintiff must be limited by his bill of particulars, he is entitled to recover for the value of 619,609 ft. of lumber, less what was left thereof on the ground when Kidd ceased performance under his contract and to asecrtain what that amount was we turn to the record and find that of the lumber left on the ground Hillyer used at least 215,270 ft. which passed inspection and that there were 29,330 ft. rejected. This would make a total of 244,537 ft. of lumber which was not used by Kidd in the construction of the building and which was not taken over by the city as the property of Kidd to reduce his liability to the city, but was sold by Kidd to a third party and paid for by such third person to Kidd's Trustee in bankruptcy.

The record shows that it was estimated that Kidd used 303,000 ft. of lumber which was placed in the construction; that 10% should be added to this for waste in cutting and fitting. 303,000 ft. plus 10% thereof is 333,300 ft. This leaves 42,069 ft., which reasonably may have been consumed by Kidd in the building of scaffolds, staging, runways and for other purposes necessary incident to the building. So it is that under the most favorable aspect of the record the surety company was liable as surety on Kidd's bond to the user plaintiff for the value of 375,369 ft. of lumber at $41.75 per thousand less $10,000.00 paid by Kidd while Kidd was performing the construction under his contract with interest thereon from January 2, 1923. The principal on this basis was $5,671.65. The accrued interest to date of judgment

$2,913.70, which added to the principal makes a total of $8,585.35. The total amount of the judgment was $14,803.63.

If the plaintiff shall within ten days of the filing of the mandate in the court below enter a remittitur for the sum of $6,238.28 the balance of the judgment for the sum of $8,565.35 will stand affirmed as of the date of the judgment. Otherwise, the judgment will stand reversed and the cause be remanded for a new trial.

It is so ordered.

ELLIS AND BROWN, J.J., concur.

WHITFIELD P.J., AND TERRELL AND DAVIS, J.J., concur in the opinion and judgment.