J. D. SANDERS, doing business as Micanopy Service Station, *Plaintiff in Error,* v. G. L. HODGES and G. B. STALLINGS, *Defendants in Error.*

147 So. 571.
Division A.
Opinion filed April 13, 1933.

*S. L. Scruggs* and *B. P. Richards,* for Plaintiff in Error; No appearance for Defendants in Error.

TERRELL, J.—The declaration exhibited in this cause was in six counts, count one being in assumpsit, is alone relied on.

The action was brought by Sanders against Hodges and Stallings, but was dismissed on motion of the plaintiff as to Hodges.

The declaration is cast on the theory that Stallings requested Sanders to extend to him (Stallings) credit for goods, wares and merchandise to be delivered to Hodges as and when requested. Relying on the promise of Stallings and in compliance with his request, Sanders from time to time delivered to Hodges goods, wares and merchandise, amounting to $133.71, all of which is due and unpaid.

A demurrer to the declaration was overruled and the cause went to trial on the following pleas:

"*For First Plea* Defendant says that he never was indebted as alleged.

"*For Second Plea* Defendant says that he never authorized G. L. Hodges to purchase any wares, goods or merchandise from the Plaintiff on the account of the Defendant.

"*For Third Plea* Defendant says that before action the Defendants satisfied and discharged Plaintiff's claim by payment."

The only record of the sales to Hodges was kept in a sales or shop book with duplicate sheets in blank as to name, date, address of purchaser, amount, etc. Itemized statements of these sales were made in Hodges' name on the duplicate sheets, both sheets were initialed by him and he retained the original. Sanders retained the copies and at the trial offered them in evidence. The offering was objected to by the defendant on the ground that Stallings' promise was within the statute of frauds. The objection was sustained. Sanders was then asked the question whether or not the goods sold and delivered to Hodges were sold on Stallings' direct promise to pay for them or were they sold on Stallings' promise to pay for them if Hodges did not do so

Objection to this question was also interposed and sustained. Other questions were proffered with the view of determining whether Sanders actually extended credit to Stallings or Hodges and for the purpose of explaining the sales sheet, but all such testimony was rejected. The jury returned an instructed verdict for the defendant, final judgment was entered and the present writ of error was taken to that judgment.

We are first confronted with the question of whether credit was extended by Sanders direct to Stallings or to Hodges on Stallings' guaranty, but in either event was the agreement to extend it within the statute of frauds?

The declaration sounds against Stallings for goods, wares and merchandise delivered to Hodges at Stallings' request and promise to pay for them. The cause of action, in other words, rests on Stallings' promise to pay rather than on his promise to pay if Hodges did not. The statute of frauds, Section 3872, R. G. S., of 1920, Section 5779 C. G. L., of 1927, in effect provides that no action shall be brought to charge the defendant on a "special promise to answer for the debt, default or miscarriage of another person" unless the agreement or promise or some memorandum of it be in writing, signed by the party to be charged.

There is a marked distinction between an original or direct promise on the part of a third person to pay for goods sold and delivered to another solely on the credit of the third person, and a collateral promise on the part of such third person to pay for goods sold and delivered to another, in the event the one to whom sold fails or refuses to pay for them. the latter or collateral promise is within the statute of frauds while the former or direct promise is not considered to be. Peterson v. Paxton Pavey Lumber Co. of Florida, 102 Fla. 89, 135 So. 501; Makin v. Jones, 63 W. Va. 373, 60 S. E. 248, 15 L. R. A. (N. S.) 214, with special reference to case

note and authorities cited. Brewer v. Home Supply Co., 17 Ala. App. 273, 84 So. 560; Tatum v. Waters, 31 Ga. App. 279, 120 N. E. 424, 25 R. C. L. 487.

The pith of the holding in these cases is that if a third person makes a direct unconditional promise or agreement to pay for goods delivered or to be delivered to another, the delivery being contemporaneous with or flowing from the agreement and it being intended by the parties that the third person is liable in the first instance for the payment of the goods, the promise or agreement will be treated as an original one and not within the statute of frauds.

The agreement or promise or some memorandum of which the statute of frauds requires to be in writing does not have reference to the promissor's own debt but refers to the debt of another which he agrees to protect. The question of whether the promise was direct or collateral, that is to say, to whom credit was extended, is one of fact to be determined by the jury from the evidence adduced. The question of whether the promise is sufficient to support a cause of action is one of law for the court. Cordner Co. v. Manevetz, 92 Conn. 587, 103 Atl. 842, 27 C. J., 390, Section 49 and 492.

The declaration here is grounded on a direct rather than a collateral promise to pay and is sufficient for that purpose. While the competency of the evidence to prove the allegations of the declaration was a question for the trial court, the question of whether or not the evidence was sufficient for this purpose was one for the determination of the jury.

This brings us to the question of whether or not the shop books or sales sheets offered in evidence can be explained. Book charges are no part of the agreement between the vendor and vendee. Where goods are charged in the books of a merchant or salesman to the person for whose benefit they

are furnished the charge creates a *prima facie* presumption that they were sold on the credit of the person to whom charged but that presumption is not conclusive and may be explained though the evidence to do so must be of strong character.

It may be shown that this method of charging is' in line with local custom or that it was requested by the promissor to enable him to keep check on the items sold or any other explanation may be offered to show whether the promise was direct or collateral. Winslow v. Dakota Lumber Co., 32 Minn. 237, 20 N. W. 145; Larsen v. Jensen, 53 Mich. 427, 19 N. W. 130; Hammond Coal Co. v. Lewis, 248 Mass. 499, 143 N. E. 309; Cordner v. Manavetz, *supra;* Haven v. Bearden, 4 Sneed (35 Tenn) ; McGowan Commercial Co. v. Midland Coal and Lumber Co. 41 Mont. 211, 108 Pac. 655; Wood v. Dodge, 23 S. D. 95, 120 N. W. 774; Lovell v. Haye, 85 Wash. 109, 147 Pac. 632.

It follows that evidence should have been admitted to prove the character of the agreement and to explain the charge slips. The judgment below is accordingly reversed.

Reversed.

Davis, C. J., and Ellis, J., concur.

Whitfield, P. J., and Brown and Buford, J. J., concur in the opinion and judgment.