SEBRING, Justice.
Quality Roofing Tile Company, a co-■partnership, contracted with Daniels Roof-.ing 'Company, a subcontractor, to furnish tile to certain property owned by the appellants for a construction job for which Momar Construction Company was general contractor.
Some tile was furnished to the project for which the tile company received payment from the contractor. However, before all tile was furnished, a check given to the tile company by the subcontractor for tile theretofore furnished was returned because of insufficient funds. The tile company immediately stopped further ' delivery of materials until they .had had a conference with the general contractor, and the latter had promised them that it would see that they would be paid for all tile delivered in the future.
After the construction job was completed, the tile company presented their bill for materials to the general contractor for tile that had been furnished to the job subsequent to the default in payment by the subcontractor. The general contractor refused to pay the bill on the ground that he had paid the subcontractor. in • full for his services and had received a complete release of lien from him for work and materials furnished under the subcontract. After payment was refused, the tile company serve a cautionary notice of intention to claim a lien upon the owners of the property and thereafter instituted this suit to enforce their lien against the general contractor and the property owners.
Evidence in the cause, was submitted directly to the chancellor. -At the conclusion of the hearing he found in favor of the tile company and entered the decree appealed from.
1 The real point in fhe case is whether in the conference held between the' general contractor and the tile company in respect to payment for materials to be delivered to the job after the default in payment by the subcontractor, the general contractor merely “guaranteed” the payment of the money to become due the tile company from the subcontractor, or made an independent and unconditional promise to pay for the material at all events, without regard to the subcontractor and his original contract with the tile company.
*280 The nature of the contract made is, of course, all important; because if the oral contract made between the general contractor and the • materialman involved a collateral rather than a direct, promise, it was within the Statute of Frauds and hence was not enforceable. See Section 725.01, Florida Statutes 1951, F.S.A.; Sanders v. Hodges, 109 Fla. 391, 147 So. 571, and authorities there cited; Schilling v. Harrington, 135 Fla. 466, 186 So. 222; Craft v. Kendrick, 39 Fla. 90, 21 So. 803.
In his final decree the chancellor concluded from the evidence ■ that the agreement made by the general contractor was that it would pay the tile company directly for any material thereafter delivered to the job. Consequently, although the promise, was oral, .it was a direct and not a collateral' one; there was sufficient consideration to support the promise; and it was therefore not within the Statute of Frauds. ■
We find sufficient competent evidence in the record to support the findings of the chancellor.'
It is plain that when the subcontractor failed to make current payments to the tile, company for materials theretofore delivered, the tile company was under no moral or legal obligation to make delivery of materials in the future. In order to complete the project in accordance with its contract with the owner of the property, the' general contractor agreed with the tile company that if despite the default of the subcontractor it would continue to deliver tile to the job, it, the general contractor, would pay the tile company for all materials delivered. Thereafter, the tile company delivered tile to the project in conformance with the. terms of the new contract it had made with the general contractor, and is clearly entitled to look to the latter for payment for the materials. 37 C.J.S., Frauds, Statute of, §§ 16 and 20.
The evidence which the chancellor chose to believe was sufficient to show a direct undertaking on the part of the general contractor to pay for the goods to- be delivered, not merely a collateral promise depending upon subsequent default by the subcontractor. Therefore, so far as concerns the right of the materialman to recover from the general contractor the issue is governed by the principle set forth in the above cited cases.
As to the right of the tile company to recover from the owner of the property upon which the improvements were erected, -the sums due and owing from the general contractor for the tile delivered, the chancellor found from the evidence “that no evidence of proper payment of the contract price to the general contractor on his direct contract with the owner has been introduced in evidence -by any of the defendants, the defendants having failed to introduce any evidence whatsoever as to payment to the general contractor *
This finding is supported by the record before us and must lead us to the conclusion that at the time the tile company served the property owner with notice of intention to claim a lien for tile delivered to the premises, the owner had on hand sufficient moneys due and owing the general contractor with which to discharge the obligation to the tile company. If in the face of a lien notice served upon it by the tile company it paid over to the general contractor the entire amount due on the contract, then it did so at its peril and must be held liable for the amount of the lien asserted by the tile company. See Sections 84.02, 84.04, 84.05, 84.06, Florida Statutes 1951, F.S.A.
Accordingly, the decree appealed from should be affirmed.
It is so ordered.
HOBSON, C. J., and TERRELL and MATHEWS, JJ., concur.