94 So.2d 821 (1957)
A.K. HILKMEYER, d/b/a Dixie Hatcheries, Petitioner,
v.
LATIN AMERICAN AIR CARGO EXPEDITERS, Inc., a Florida corporation, Respondent.
Supreme Court of Florida, Division B.
April 24, 1957.
Rehearing Denied May 22, 1957.
*822 Shutts, Bowen, Simmons, Prevatt & Julian, Miami, for petitioner.
Abe Schonfeld, Miami Beach, for respondent.
DREW, Justice.
The case arises on a petition for certiorari to review a circuit court affirmance of a civil court of record judgment, wherein the civil court of record judge set aside a jury verdict upon a motion for judgment non obstante veredicto by the defendant, where there was also pending a reserved ruling on a motion by defendant for a directed verdict. The trial court set aside the jury verdict because "the evidence adduced at the trial showed that the defendant did not make a direct contract to pay for the goods involved, but made only a guarantee."[1]
*823 In this case the labels are not important and the court will consider the situation as the various elements actually functioned. The trial judge reserved his ruling on a motion by defendant for a directed verdict made at the close of all the evidence presented by both sides, and when he granted defendant's mislabeled motion for "verdict non obstante veredicto" after verdict by the jury for plaintiff, the situation was actually that contemplated by Rule 2.7(b), 1954 Rules of Civil Procedure, 31 F.S.A.:
"(b) Reservation of Decision on Motion. Whenever a motion for a directed verdict made at the close of all of the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury at such time subject to a later determination of the legal questions raised by the motion. Within 10 days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict * * *."
The circumstances of this case are that A.K. Hilkemeyer, doing business as Dixie Hatcheries, petitioner here, plaintiff below (hereinafter called plaintiff) sued Latin American Air Cargo Expediters, Inc., respondent here, defendant below (hereinafter called defendant) for $2,600 which represented the sale price of a shipment of baby chickens. The ultimate purchaser of the chickens in South America had previously dealt with plaintiff through a transshipping agent, who paid for the chickens under a C.O.D. arrangement; and through defendant, who operated at that time under an arrangement not revealed in the record. Defendant is a transshipping agent, who in this instance received shipments over local air lines from the plaintiff and arranged for transferring the shipments to overseas air lines. Plaintiff claims that defendant entered into an oral agreement to directly assume the entire responsibility of paying him for this particular shipment. The defendant claims that it did not directly assume liability, but only accepted the goods for transshipment and agreed to operate as a paying agent for the ultimate purchaser. Plaintiff has made no attempt to recover from the ultimate purchaser.
This case must be examined and disposed of under rules developed by the Court to govern "common law" certiorari.[2] *824 On this subject we said in Nation v. State, 1945, 155 Fla. 858, 22 So.2d 219:
"The common-law writ of certiorari issues, not to serve the purpose of an appeal, or to give an aggrieved party a second appeal, but to cause the record of an inferior court to be brought up in order that a superior court may determine from the face of the record whether the inferior court has exceeded its jurisdiction or has not proceeded in accordance with the essential requirements of law. * * * The writ being thus limited in function, the subject matter of a suit that has been tried in a court of competent jurisdiction and thereafter reviewed in an appropriate appellate tribunal will not be reinvestigated, tried and determined upon the merits generally when brought here by certiorari." (Emphasis supplied.)
The writ of certiorari is issuable or not in the sound judicial discretion of the Supreme Court. Janet Realty Corp. v. Hoffman's, Inc., 1943, 154 Fla. 144, 17 So.2d 114. Although this case presents a close question it involves a serious enough departure from the essential requirements of law to warrant a favorable exercise of our discretion.
The considerations which would authorize a trial judge to direct a verdict are the same as those involved in a reserved motion for a directed verdict under Rule 2.7(b). Cf. Marsh v. Illinois Central R. Co., 5 Cir., 1949, 175 F.2d 498. A great variety of situations have brought forth numerous formulas for providing standards of proof for submission of evidence to the jury. The Supreme Court of the United States has said: "Nor is the matter greatly aided by substituting one general formula for another. It hardly affords help to insist upon `substantial evidence' rather than `some evidence' or `any evidence,' or vice versa. The matter is essentially one to be worked out in particular situations and for particular types of cases. Whatever may be the general formulation, the essential requirement is that mere speculation be not allowed to do duty for probative facts, after making due allowance for all reasonably possible inferences favoring the party whose case is attacked." Galloway v. United States, 1943, 319 U.S. 372, 395, 63 S.Ct. 1077, 1089, 87 L.Ed. 1458.
This Court's views have recently been recorded:
"Power to direct a verdict should be cautiously exercised and the same should never be granted unless the evidence is such that under no view which the jury might lawfully take of the evidence favorable to the adverse party could a verdict for the adverse party be sustained. * * * A party moving for a directed verdict admits not only facts shown by the evidence, but also reasonable inference favorable to the adverse party that the jury might fairly and reasonably arrive at from the evidence, and if the evidence is conflicting, or evidence tending to prove the issues, the case should be submitted to the jury as a question of fact under appropriate instructions." Katz v. Bear, Fla. 1951, 52 So.2d 903, 904.
See for example, Oppenheimer v. Werner, Fla. 1950, 46 So.2d 870; Chaney v. Headley, Fla. 1956, 90 So.2d 297; Bryan v. Loftin, Fla. 1951, 51 So.2d 724; Mullis v. City of Miama, Fla. 1952, 60 So.2d 174. See also Sec. 54.17, Florida Statutes 1955, F.S.A.
The most recent expression of this Court on the general subject is found in New Deal Cab Co. v. Stubbs, Fla. 1956, 90 So.2d 614, 615. There we said:
"Where the entire evidence is of such probative force that the trial court, to *825 give effect to the manifest weight of the evidence and the justice of the cause, should properly have granted a new trial if a verdict had been rendered for the defendant, the trial court will not be held in error for directing a verdict for the plaintiff. American District Electric Protective Co. v. Seaboard Air Line Ry. Co., 139 Fla. 451, 190 So. 820, 823, and cases there cited." (Emphasis supplied.)
We have re-examined the above quoted language in that case and the authorities cited. It was not necessary to the determination of the cause and was therefore obiter dicta. The italicized language correctly states the conditions under which a new trial may be properly awarded but the language which follows is used too loosely. It is important to make a distinction between situations where a trial judge can properly direct a verdict and situations where he can properly grant a new trial. "The considerations and legal principles that guide the judicial discretion in directing a verdict and in granting a new trial on the evidence are not the same." Gravette v. Turner, 1919, 77 Fla. 311, 81 So. 476, 477; Anderson v. Southern Cotton Oil Co., 1917, 73 Fla. 432, 74 So. 975, L.R.A. 1917E, 715; Florida East Coast Ry. Co. v. Hayes, 1914, 66 Fla. 589, 64 So. 274. The reasons for and a clear exposition of the distinctions appear extensively presented in Gravette v. Turner, supra, one of the cases cited as authority in the New Deal Cab Co. case. We clearly said in the Gravette case that where there was substantial evidence tending to prove the issue, it "should have been submitted to the jury for their finding on the facts, and not taken from them to be passed upon by the judge as a question of law." 77 Fla. 317, 81 So. 478. We also said,
"Even though a verdict should not be directed on the evidence in deference to the organic right to a jury trial and to the statute regulating the subject, yet if on motion for a new trial `where there is conflict in the testimony, it is within the province and power of the court to set aside a verdict which does not reach a substantially just conclusion in cases where the conflicts are of such character and the circumstances of such nature as to give just ground for the belief that the jury acted through prejudice, passion, mistake or any other cause which should not properly control them. This power exists in the court. In exercising it the court does not encroach upon the province of the jury, for the reason that it does not conclusively settle facts in the form of a verdict, but only gives another jury the opportunity of so doing, and of correcting what appears to be a mistake.'" 77 Fla. 316, 81 So. 478.
The dividing line [a grey area at best] between judge and jury in situations like this would be totally indistinguishable from many other aspects of the more general problem of facilitating jural disposition of cases, if it were not for the requirement in our Constitution that "The right of trial by jury shall bee secured to all, and remain inviolate for-ever." Florida Constitution, Declaration of Rights, § 3, F.S.A. An organic provision similar to ours has been described as "designed to preserve the basic institution of jury trial in only its most fundamental elements, not the great mass of procedural forms and details, varying even then [1791] so widely among common-law jurisdictions."[3] Galloway v. United *826 States, 319 U.S. at page 392, 63 S.Ct. at page 1088. Questions arising out of this concept must be solved as they arise; the purpose of our over-simplified statement, however, is to emphasize the fact that it is not every adverse ruling on submission of evidence to a jury, or taking a case from a jury, which raises a serious constitutional question. The observation is particularly relevant in the case at bar which seeks a discretionary writ of certiorari.
Reverting, now, to the case under immediate consideration the trial judge reasoned that the alleged oral guarantee would fail as an enforceable contract under Sec. 725.01, Florida Statutes 1955, F.S.A., the Statute of Frauds. Plaintiff focuses his argument here on this assumption and there is enough of the record here to support him since the defendant has filed no brief or supplemental transcript to offset what is before the Court. "The question of whether the promise was direct or collateral, that is to say, to whom credit was extended, is one of fact to be determined by the jury from the evidence adduced." Sanders v. Hodges, 1933, 109 Fla. 391, 147 So. 571, 572. An extended recitation in this opinion of the evidence on the issue of a direct or collateral promise by defendant to answer for the debt of another would serve no useful purpose. It is sufficient to say that testimony offered by three witnesses on this issue is conflicting and permits different reasonable inferences. The well-settled rule in Florida is that under such circumstances the issue should not be taken from the jury. E.g. Bryan v. Loftin, supra; Tooley v. Margulies, Fla. 1955, 79 So.2d 421; concurring opinion joined in by the Court in Townsend Sash Door & Lumber Co. v. Silas, Fla. 1955, 82 So.2d 158; Merwin v. Kellems, Fla. 1955, 78 So.2d 865.
For this reason, although it is a close question in this particular situation, we have exercised our discretion to issue the writ of certiorari. The order of the circuit court affirming the questioned order is quashed with directions to enter an order directing the trial court to reinstate the verdict of the jury and to reconsider a motion for a new trial if such was made and remains undisposed of.
Certiorari granted.
TERRELL, C.J., and HOBSON and O'CONNELL, JJ., concur.
NOTES
[1] It is necessary to explain the falsity of the labels involved in the post-trial pleading before considering more of the case. In the first place, judgments non obstante veredicto in Florida common law could only be granted for the plaintiff, not the defendant, who was movant here. Tolliver v. Loftin, 1945, 155 Fla. 698, 21 So.2d 359. The conclusive factor in the case at bar is that a common law in Florida motions for judgment non obstante veredicto or to arrest judgment searched matters of record (generally pleadings) in the trial court, but could not bring up testimony for the trial judge's consideration. Peavy-Wilson Lumber Co. v. Baker, 1941, 148 Fla. 296, 4 So.2d 333; Tolliver v. Loftin, supra; Okeechobee Co., for Use and Benefit of Hamrick v. Norton, 1942, 149 Fla. 651, 6 So.2d 632. Cf. Newton v. Glenn, 5 Cir., 1945, 149 F.2d 879, certiorari denied 326 U.S. 758, 66 S.Ct. 100, 90 L.Ed. 456.
[2] At least as early as 1915 the Legislature enacted a law relating to civil courts of record. The act contained a provision for review by the circuit courts and a provision for certiorari to this Court which has remained essentially the same down to Sec. 33.12, Florida Statutes 1955, F.S.A. This Act, Chapter 6904, Acts of Florida, 1915, attempted to vest in this Court power to review by certiorari cases which had been decided by the circuit courts on review of civil courts of record, with "the same power and authority in the case as if it has been carried by writ of error to the Supreme Court." We held this act invalid as an attempt of the Legislature to enlarge the constitutionally defined appellate jurisdiction of the Supreme Court. American Ry. Express Co. v. Weatherford, 1924, 86 Fla. 626, 98 So. 820; Brinson v. Tharin, 1930, 99 Fla. 696, 127 So. 313. This holding has been more recently confirmed in Mutual Benefit Health & Accident Ass'n v. Bunting, 1938, 133 Fla. 646, 183 So. 321 and Curry U-Drive It, Inc., v. Ross, Fla. 1956, 89 So.2d 796.
[3] While we find that much has been written on the general subject we find no definitive historically based analysis of the right to trial by jury. See e.g. Federalist Nos. 81 and 83; Thayer, Preliminary Treatise on Evidence at the Common Law, Ch. 2-5; 21 Amer.L.Rev. 859; 1 Select Essays in Anglo-American Legal History 367; 31 Harv.L.Rev. 669; Capital Traction Co. v. Hof, 1899, 174 U.S. 1, 19 S.Ct. 580, 43 L.Ed. 873; Galloway v. United States, supra, and sources cited in the majority and minority opinions of this case; cf. 37 Harv. L.Rev. 49. We do not even have the benefit in Florida of an organically stated time to which we might refer to obtain such knowledge through our own efforts. We must assume, however, that the time intended was the time of the first adoption of our provision. See, Hughes v. Hannah, 1897, 39 Fla. 365, 22 So. 613; Dudley v. Harrison, McCready & Co., 1937, 127 Fla. 687, 173 So. 820.