MILLEDGE, STANLEY, Associate Judge.
We disagree with the chancellor on only one part of his decree; that in which he de *624 cided that Troup Bros., Inc., had a valid lien on the land under mortgage foreclosure under the Mechanic’s Lien Law for the construction of streets upon the land. Since Troup Bros, failed to give the owner a statement under oath that all lienors contracting directly with, or directly employed by such contractor have been paid in full, or the name of each such lienor who has not been paid in full and the amount due or to become due each for labor or services performed or materials furnished, as required by § 84.04, Fla.Stat., F.S.A., the chancellor necessarily decided that Troup Bros, was not a “contractor” and, therefore, not subject to the requirement of the sworn statement. If Troup Bros, fits the category of “contractor” under the Act, the failure to give the sworn statement was fatal to its lien claim. Pope v. Carter, Fla.App.1958, 102 So.2d 658.
We think that Troup Bros, was a contractor. There was no conflict in the evidence, so weight and credibility are not factors. The only evidence came from Troup Bros. From this it appears that there was an oral contract between Troup Bros, and the owner by which Troup Bros, furnished pit rock, sand, and asphalt for road construction, and rented equipment to the owner which Troup Bros, used in this road construction. Troup Bros, hauled in the pit rock, put it in place and compacted it. After they got the road “in shape” they covered it with asphalt and pea rock. The contract was to pay for the road at a fixed price for the material by the cubic yard and the use of machines at a fixed price per hour for various road machines. The surfacing with asphalt and pea rock was 'charged for at a definite amount per square yard. The management of the road building, including the grading, was by Troup Bros. There was no proof, nor had there been any allegation that the sworn statement required by § 84.04, supra, had been given.
Troup Bros, contends, and the chancellor evidently agreed, that it was not a contractor but a materialman under the definition of § 84.01, Fla.Stat., F.S.A., that is:
“ ‘Materialman’ means any person who, under contract, furnishes materials to the owner, contractor, or subcontractor on the site of the improvement or for direct delivery to the site of the improvement * * *.”
The same section defines “furnish materials” as follows:
“ ‘Furnish materials’ means supply materials which are incorporated in the improvement * * * and shall include supplying tools, appliances or machinery used in the particular improvement to the extent of the reasonable rental value for the period of actual use * * * ”
The statutory definitions must be read in the context of the general purpose of the Mechanic’s Lien Law. There is no purpose in requiring one, as a condition to the existence of a lien, to give the owner information regarding the status of those who might be in a position to claim, when in the nature of the transaction, there is no third person likely to be in a position to claim a lien. So, one who merely brings materials to a job or rents a machine used on a job serves no purpose in giving a sworn statement concerning lienors.
The purpose of having a contractor meet the sworn statement requirement of § 84.04, supra, is that he is one whose activity on the land and whose contract with the owner necessarily imply the probable existence of “lienors contracting directly with or directly employed by such contractor,” so in order to claim a lien himself he must, as prescribed show the lien status of others about whom he has knowledge, but the owner may not have knowledge, so as to relieve the owner from the risk of double payment.
A person who dumps a truckload of his lumber on a construction job or who brings his ready mixed concrete in a revolving mixer, which stays on the job until the concrete is poured, is one who may be paid safely without great danger of another’s claiming a lien through such supplier.
*625 When, however, one undertakes for a landowner to grade a road, bring in such materials as are necessary to build the road, and puts them in proper place and in proper condition, and later adds the proper surfacing material and again adds labor and skill, so that the end result of a proper road is achieved, the entire operation is complex enough so that there may very well be persons with whom the contractor has dealt in this operation who are in the position of being “lienors,” against whom the owner is entitled to protection. Whether the payment for a road is according to an agreed price, or whether payment is determined by so much a unit price of materials and so much a unit price per hour for machines (which here necessarily includes men to run them) and so much a square yard for surfacing the road, is of no significance. One who contracts to build a house for actual cost, plus 10%, or at so much per cubic yard, is not a “materialman,” whereas, if he had agreed to do the same thing for a fixed sum he would be a “contractor.” The purpose of the lien law does not require categories according to the terms of payment. It is concerned with creating categories for the protection of those whose materials, labor, and skills improve the land of others with some protection to the owner against double payment.
Had the present case been one in which Troup Bros, agreed with the owner to construct certain roads with certain materials in a certain manner for an agreed price of $7,883.27, there would not have been much difficulty in putting Troup Bros, in the category of “contractor” and denying it a lien since it had failed to protect the owner by the sworn statement.
The situation here is to be distinguished from those in which the owner functions as his own contractor. See Orange Plumbing & Heating Company v. Wolfe, Fla. 1956, 89 So.2d 671; Pope v. Carter, supra. In the Pope case, as here, the lien claimant entered into an agreement with the owners to furnish materials and perform work. It was held that the complaint was properly dismissed for failure to allege giving the sworn statement. The reported case does not in detail describe the contract. The court file of that case (supplied by counsel’s brief) shows that the subject of the contract was to furnish fill dirt and to grade at a price of 67 cents per cubic yard of fill. The only significant difference between the facts in the Pope case and this one is that here, additionally, is the charge for road machinery with operators at an hourly rate; a difference without significance.
The final decree appealed is reversed only insofar as it decreed Troup Bros., Inc., to have a valid lien on the land involved in the decree. In all other respects the decree is affirmed.
Affirmed in part and reversed in part.
HORTON, C. J., and CARROLL, CHAS., J., concur.