135 So.2d 755 (1961)
TROUP BROTHERS, INC., and Federal Insurance Company, Appellants,
v.
STATE of Florida for the Use and Benefit of MEADOWS SOUTHERN CONSTRUCTION CO., Inc., Appellee.
No. 2442.
District Court of Appeal of Florida. Second District.
December 13, 1961.
*756 Thomas S. Trantham, Jr., Mershon, Sawyer, Johnston, Simmons & Dunwody, Miami, for appellants.
Charles E. Davis, Charles L. Steinberg, Fishback, Williams, Davis & Dominick, Orlando, for appellee.
ALLEN, Acting Chief Judge.
This appeal is brought by defendants as appellants from a verdict and judgment in favor of plaintiff in a suit against defendant general contractor and defendant surety on a statutory construction completion bond under §§ 255.05 and 337.18, F.S.A., for road work performed for the state. Defendants contend that the evidence totally fails to establish any right on the part of plaintiff to recover and urge this court to reverse the lower court with directions to enter judgment in favor of defendants. They have assigned as error the lower court's refusal to grant their motions for directed verdict made at the close of the plaintiff's case and at the close of all the evidence and also their post-verdict motion for judgment notwithstanding the verdict.
It is undisputed that defendant Troup Brothers, Inc., had been the prime contractor on a state road project and that plaintiff was an unpaid lessor of digging equipment rented to one Dunlap who had used said equipment to remove marl from a marl pit. Dunlap in turn, per contract with Troup, delivered the marl to the road job site some seven or eight miles from the marl pit. The equipment lessor, Meadows Southern Construction Co., Inc., filed suit as use plaintiff in the name of the State of Florida against defendants' general contractor and surety as an unpaid materialman entitled to recover under the statutory construction completion bond. Evidence was submitted to establish three alternative theories claimed to warrant recovery. The first theory is that plaintiff was an unpaid materialman of a subcontractor, Dunlap, who defaulted in payment thereby rendering defendant general contractor liable for payment. The second theory is that, based on a purported oral agreement between plaintiff and defendant contractor, the rental equipment was, in legal effect, furnished directly to defendant by plaintiff thereby rendering defendant liable. The third theory, based on the same facts purported to raise said oral agreement, is that defendant was liable as a guarantor in the event of default in payment by Dunlap.
The evidence adduced showed an agreement between Dunlap and defendant that the former would supply marl to the latter for so much a load. It also showed that Dunlap merely made deliveries of the marl, performing no work at the job site and further, that the rental equipment consisting of a dragline and a bulldozer was located at all times material, at the marl pit and not at the job site. At the trial, Dunlap, for the first time, asserted that he was unpaid to the extent of $20,000.00 for marl delivered. This claim, however, was unsubstantiated. Defendant produced evidence that all money due Dunlap had been paid, some of it directly to other creditors of Dunlap per Dunlap's request. Plaintiff's vice president and Dunlap both testified to a collateral oral agreement made by defendant's superintendent to the effect that defendant would guarantee payment of the rental if plaintiff would continue leasing the equipment to Dunlap. Said agreement was purportedly made subsequent to the time Dunlap first started using the equipment. The existence of the oral agreement was denied by defendants' witnesses.
It was also shown that plaintiff had taken over the payments on certain trucks owned by Dunlap, picking up gratis whatever equity was in them. Defendant produced a witness who estimated this equity at $1500 to $2000 in an attempt to show payment of that amount of the rental bill claimed by plaintiff. Plaintiff's vice president testified, however, that one of the trucks had been wrecked and that the total equity acquired did not exceed $200.00. The rental claimed to be due and recovered by the verdict was $8,520.00.
*757 Outside of plaintiff's vice president, Dunlap was plaintiff's chief witness. The lower court admitted testimony by two witnesses for defendants which assassinated Dunlap's reputation for truth and veracity.
The language of § 255.05, F.S.A., pertinent to the instant case reads as follows:
"Any person entering into a formal contract with the state * * * shall be required * * * to execute the usual penal bond, with good and sufficient sureties, with the additional obligations that such contractor shall promptly make payments to all persons supplying him labor, material and supplies, used directly or indirectly by the said contractor, or subcontractors, in the prosecution of the work provided for in said contract; * * *.
"Any person supplying labor, material or supplies used directly or indirectly in the prosecution of the work to any subcontractor and who has not received payment therefor, shall * * deliver to the contractor written notice * * *." (Emphasis supplied.)
The main issue at trial was whether Dunlap occupied the status of a materialman or a subcontractor. Under the statute, if he were a materialman, general contractor defendant would not be liable to plaintiff, who would then occupy the status of supplier of a materialman and not afforded statutory protection. If, however, Dunlap be deemed a subcontractor, plaintiff would be protected by the statute. Since the evidence showed conclusively that Dunlap performed no work at the job site, we hold that he occupied the status of a materialman. Nowhere in the record is it shown that Dunlap contracted to perform or performed part of defendant contractor's contract. Such would have to have been the case for him to occupy the status of a subcontractor as that word is ordinarily defined. Thus, plaintiff is relegated to the position of materialman of a materialman which is excluded from the protection afforded by § 255.05, F.S.A., by the plain meaning of the language used therein. If the result were otherwise contractors purchasing supplies and materials incorporated in state construction projects would be subject to an endless chain of liability. For protection they would be required to secure performance bonds from every supplier dealt with. The statute is not construed as contemplating such a requirement.
Two Florida cases which point out the distinction between subcontractors and materialmen, though involving different statutes than the one with which we are here concerned, are Goldstein v. Acme Concrete Corporation, Fla. 1958, 103 So.2d 202, and Belcher v. Russell, Fla.App. 1961, 128 So.2d 623. As to Dunlap's status, we deem these cases controlling. The latter case involved a firm which had not only furnished road building ingredients but had put in place and compacted crushed rock and sand and then covered it with asphalt. Said firm was attempting to foreclose a lien under the general mechanics' lien law, Chapter 84, F.S.A. In so doing, it had failed to give the owner a sworn statement concerning the status of possible lien claimants as required of contractors by § 84.04, F.S.A., but asserted that it was a materialman and not required to make such a statement in order to foreclose a lien. The Third District Court of Appeals held otherwise pointing out in effect that the performance of work at the job site rendered the plaintiff a contractor and not a materialman. In so doing, the court showed what would constitute a materialman by stating at p. 624 of 128 So.2d:
"The statutory definitions must be read in the context of the general purpose of the Mechanics' Lien Law. There is no purpose in requiring one, as a condition to the existence of a lien, to give the owner information regarding the status of those who might be in a position to claim, when in the nature of the transaction, there is no third *758 person likely to be in a position to claim a lien. So, one who merely brings materials to a job or rents a machine used on a job serves no purpose in giving a sworn statement concerning lienors.
"The purpose of having a contractor meet the sworn statement requirement of § 84.04, supra, is that he is one whose activity on the land and whose contract with the owner necessarily imply the probable existence of `lienors contracting directly with or directly employed by such contractor,' so in order to claim a lien himself he must, as prescribed show the lien status of others about whom he has knowledge, but the owner may not have knowledge, so as to relieve the owner from the risk of double payment.
"A person who dumps a truckload of his lumber on a construction job or who brings his ready mixed concrete in a revolving mixer, which stays on the job until the concrete is poured, is one who may be paid safely without great danger of another's claiming a lien through such supplier."
The court also alluded to the following portion of § 84.01, F.S.A., which defines "Materialman."
"`Materialman' means any person who, under contract, furnishes materials to the owner, contractor, or subcontractor on the site of the improvement or for direct delivery to the site of the improvement or who specially fabricates materials for the improvement, and who performs no labor in the installation thereof."
In the Goldstein case, supra, the question was whether the plaintiff, an employee of a general contractor and who was injured on the job by a concrete mixer, was precluded from bringing a separate action against the owner of the mixer by operation of the Workmen's Compensation Law, Chapter 440, F.S.A. Defendant mixer owner contended that it was a subcontractor and not a third party tort-feasor against whom a separate action could be brought under § 440.39(1) F.S.A. The defendant delivered ready mixed concrete to the job, performing only the mechanical process of pouring it into forms previously prepared by the general contractor. Under these facts, the Florida Supreme Court, by adopting the definition of "materialman" in § 84.01, F.S.A., of the Mechanics' Lien Law, held that defendant constituted not a subcontractor but a materialman and hence a third party against whom a common law action could be brought.
In the instant case we are controlled by Chap. 255, F.S.A., but have referred to Chap. 84, F.S.A., for a definition of "materialman." Therefore, the following language of the Supreme Court in Goldstein, supra, appearing at p. 204 of 103 So.2d is noteworthy:
"The mechanics' lien statutes are, of course, not decisive of this question by any means, but in both the mechanics' lien statutes (F.S. ch. 84, F.S.A.) and the Workmen's Compensation Act (Ch. 440) the lawmakers use similar phrasing in dealing with construction projects. We may assume that in both chapters they intended certain exact words or exact phrases to mean the same thing. In a broad sense the chapters are in pari materia and should, to the extent that an understanding of one may aid in the interpretation of the other, be read and considered together."
In the instant case, the pari materia relationship is much closer for § 255.05, F.S.A., provides for the enforcement of liens in work performed for the sovereign of the same type that Chap. 84, F.S.A., provides for enforcement of against private persons. Since § 255.05, F.S.A., contains no definition of "materialman" we deem controlling the one contained in § 84.01, F.S.A.
Cases in other jurisdictions lend further support to a finding that plaintiff in the *759 instant case merely supplied rental equipment to a materialman as opposed to a subcontractor and is therefore precluded from recovering under the statutory bond. In Webb v. Blue Lightning Service Company, 1960, 237 Miss. 862, 116 So.2d 753, cited by appellant, Webb was the general contractor for paving a public road and had executed a performance bond with a surety. Webb purchased gravel from a company which subsequently failed to pay its fuel bill to plaintiff Blue Lightning whereupon suit was brought against Webb and its surety. Another claimant, D.O. King had furnished stabilizer gravel to the defaulting gravel company which resold it to Webb for which recovery was also sought from Webb. The trial court entered judgment against Webb. On appeal the trial court was reversed, the court stating at p. 755 of 116 So.2d:
"We are of the opinion that Webb and his Surety are not liable to claimants under the facts of this case. It will be noted that the claim of the Blue Lightning Service Company rests upon its furnishing diesel fuel and gasoline for the production by Richton of gravel. Webb had simply agreed to purchase gravel from Richton. Richton was under no obligation to do anything whatever towards the construction of the road. All it did was to sell to Webb gravel delivered at the pits. He had no responsibility to see that the contract with the State Highway Commission was fulfilled in any respect. There is nothing peculiarly applicable to paving the road in the type of diesel fuel and gasoline furnished by Blue Lightning. The same type of fuel could have been purchased by Richton from many other dealers in such fuels. Nor was the gravel furnished by King peculiarly applicable to the road. It was washed gravel suitable for use in other construction projects."
In Northwest Roads Co. v. Clyde Equipment Co., 9 Cir.1935, 79 F.2d 771, 772, a case very similar to the instant case, the defendant general contractor had entered into a road contract with Clallam County, Washington. The bond in that case provided for payment to:
"`* * * [A]ll laborers, mechanics, subcontractors and material men, and all persons who shall supply such * * [contractor or] subcontractors with provisions and supplies for the carrying on of such work * * *.'" (Emphasis supplied.)
The plaintiff had rented equipment to two persons who used it to process crushed stone which was furnished to defendant contractor. The rental was not paid and plaintiff equipment lessor attempted to recover on the bond. Defendants contended that the users of the equipment were not subcontractors but were materialmen and therefore plaintiff was not protected under the terms of the controlling statute or the bond. In sustaining this contention the court said at p. 772, of 79 F.2d:
"As we view it, the only materialman who can successfully maintain an action under the statute is one who furnishes supplies or materials to a contractor or a subcontractor. Neary v. Puget Sound Engineering Co., 114 Wash. 1, 194 P. 830, is conclusive to the effect that a claim for services rendered to a mere materialman is beyond the protection of the statute. By the only reasoning available to us because of that holding, we must also say that a claim for materials furnished to a mere materialman is likewise without the provisions of the statute, inasmuch as the statute permits recovery only by `any person or persons performing such services or furnishing material to any subcontractor.'"
Under our statute § 255.05 and in view of persuasive authority from other jurisdictions we therefore hold that one who supplies rental equipment to a materialman who uses said equipment for extracting materials in turn furnished to a general contractor for incorporation into a state *760 road project is not entitled to recover from the general contractor under a statutory construction completion bond for unpaid rent on the equipment.
The lower court submitted the status of Dunlap to the jury. This we hold to have been error since, under the evidence, Dunlap constituted a materialman as a matter of law.
Plaintiff also relied on a purported oral agreement made with defendant contractor's superintendent that defendant would guarantee rental payments. Plaintiff contended that, regardless of the status of Dunlap, this agreement made plaintiff a direct supply materialman of defendant and thus covered by the statute or, in the alternative, rendered defendant a guarantor of payment in the event of default by Dunlap.
Plaintiff's vice-president testified that defendant-contractor "guaranteed the rental." There was no additional evidence to establish any oral direct supply agreement between plaintiff and defendant such as would render defendant a primary obligor on the rental contract. The only agreement testified to was one of guaranty. Under our statute of frauds, § 725.01, F.S.A., this purported agreement was required to be is writing to be enforceable against defendant-contractor. In order to avoid the operation of the statute it is essential to establish the party sought to be charged as the primary obligor. It must be shown that the parties intended that the third party be liable in the first instance. In other words, the party to be charged must have made a direct unconditional promise to pay for goods delivered or to be delivered to another and not a collateral promise to respond in payment in the event of default by the person receiving the goods. Such a direct promise can be shown if the evidence exhibits an intent of the parties that the promisee should look first to the promisor for payment, the obligation for which is not conditioned on any prior default in payment by the one receiving the goods. See Bensam Corp. v. Felton, Fla. 1953, 63 So.2d 278; Sanders v. Hodges, 1933, 109 Fla. 391, 147 So. 571; 15 Fla.Jur., Frauds, Statute of § 4; Simpson Contracts § 50. The testimony by plaintiff's vice-president indicates that the purported guaranty agreement was no more than an assurance by defendant-contractor's superintendent that Dunlap had sufficient money coming to him to cover equipment rental for marl already hauled or to be hauled.
The evidence presented by plaintiff totally fails to demonstrate any right in plaintiff to recover from defendants either under the bond or by virtue of a separate contract. Therefore, it was error for the lower court to deny defendants' motion for directed verdict at the close of plaintiff's case.
The judgment appealed from is reversed with instructions to the lower court to enter judgment in favor of defendants.
Reversed.
KANNER and WHITE, JJ., concur.