166 So.2d 701 (1964)
The BOARD OF PUBLIC INSTRUCTION, BROWARD COUNTY, Florida, at the relation of and for the Use and Benefit of MONMOUTH PLUMBING SUPPLY COMPANY, Inc., a Florida corporation, Appellant,
v.
ROOD CONSTRUCTION COMPANY, a Florida corporation, Maryland Casualty Company, a Maryland corporation, McDonald Air Conditioning, Inc., a Florida corporation, Seaboard Surety Company, a New York corporation and William C. Cameron, Trustee of Patterson Plumbing, Inc., a Florida corporation, Appellees.
No. 63-521.
District Court of Appeal of Florida. Third District.
July 7, 1964.
Rehearing Denied August 24, 1964.
William A. Ingraham, Jr., Miami, for appellant.
Paul A. Louis, Bertha Claire Lee and Fay L. Becker, Miami, for appellees.
Before BARKDULL, C.J., and HORTON and HENDRY, JJ.
HORTON, Judge.
The Board of Public Instruction of Broward County was the plaintiff and now prosecutes this appeal for the use and benefit of Monmouth Plumbing Supply Company, Inc., which was a materialman under a public works contract. The defendants were the prime contractor, his subcontractors and their sureties pursuant to § 255.05, Fla. Stat., F.S.A.[1] and the litigation below resulted in the entry of a summary final judgment adverse to appellant. The principal question involved is whether the protection of a payment bond pursuant to § 255.05, supra, extends to a person who furnishes or contracts to furnish labor and materials to a sub-subcontractor.
The complaint alleges that on July 10, 1961, the appellee Rood Construction Company contracted with the appellant Board, a public authority, to furnish all labor and materials necessary to construct a new high school building in the City of Fort Lauderdale. Article IX of the contract provided that the contract would be effective upon its execution coupled with the delivery of a surety bond guaranteeing the performance of "this contract and as security for the payment of all persons performing labor and furnishing materials in connection with this contract." Bond was duly furnished by *702 the appellee Maryland Casualty Company in the principal sum. On or about July 28, 1961, Rood subcontracted a portion of the work on the above job to the appellee McDonald Air Conditioning, Inc., who in turn furnished a performance bond to Rood with the appellee Seaboard Surety Company as surety. The latter bond provided that all persons supplying labor or materials to the principal for use in the prosecution of the work under the contract would have a right of action upon the bond. Subsequently McDonald engaged the services of Patterson Plumbing, Inc., to do a portion of the work on the job. On divers dates between December, 1961, and April 3, 1962, Patterson purchased various plumbing supplies and materials from appellant Monmouth Plumbing Supply Company, Inc., which materials and supplies were delivered to and incorporated in the project. Shortly thereafter, Patterson was adjudicated bankrupt and the appellee Cameron was duly appointed trustee thereof.
On February 11, 1963, appellants instituted suit against Cameron, as trustee, Rood as prime contractor, and the subcontractors and their sureties pursuant to § 255.05, supra, seeking to recover the sum of $15,799.75, representing purchases and deliveries by Monmouth during the above-mentioned period. After the appellees had answered, the cause came on to be heard before the lower court upon motions for summary judgent accompanied by affidavits filed by both sides. There being no issue of fact, the court entered summary judgment in favor of the appellant against Cameron as trustee for Patterson, and summary judgment against the appellant and in favor of the remaining appellees. This appeal followed.
For the sake of clarity, we pause here to summarize the position of the parties. The prime contract was between the Board of Public Instruction and Rood; McDonald was a subcontractor to Rood; Patterson was McDonald's subcontractor (a sub-sub-contractor in relationship to Rood) and Monmouth was a supplier or materialman to Patterson.
As indicated above, we must here decide whether Monmouth, the unpaid materialman or supplier to Patterson, the sub-subcontractor, is entitled to recover from the prime contractor or its surety under § 255.05, supra. This particular question appears to be one of first impression in the State of Florida. Inasmuch as there is a paucity of Florida law on this specific point, we have turned to the Federal Miller Act, 40 U.S.C.A., § 270a, et seq., which is the basis for our Chapter 255. See Winchester v. State, Fla.App. 1961, 134 So.2d 826; Union Indemnity Company v. State, 99 Fla. 656, 127 So. 307; and Kidd v. City of Jacksonville, 106 Fla. 312, 143 So. 307.
The United States Supreme Court in the case of MacEvoy v. United States, 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163, held that a materialman supplying another materialman having a direct contractual relationship with the prime contractor was not entitled to the protection of the bond on the ground that the first materialman was not a "subcontractor" under the Act, and that the relationship existing between the second materialman and the prime contract was too remote. The holding of the MacEvoy case  that is, that a materialman supplying another materialman, is too remote a relationship to be afforded protection unless the one supplied comes within the definition of a "subcontractor"  has been followed or recognized in several subsequent cases. The federal case most analogous to the one at bar is that of United State for the Use and Benefit of Newport News Shipbuilding and Dry Dock Co. v. Blount Brothers Construction Company, 1958, D.C.Md., 168 F. Supp. 407. In that case Blount was the prime contractor, Greenfield was the subcontractor who dealt directly with Blount, General Metals was a sub-subcontractor, i.e., a subcontractor of a subcontractor, who did not deal directly with the prime contractor, and Newport News was a sub-sub-subcontractor who *703 dealt with the sub-subcontractor, General Metals, and not with either the prime contractor or any subcontractor. That court reasoned:
"There are many subcontractors on large government contracts, and many sub-subcontractors, sub-sub-subcontractors and persons supplying them with labor and materials. If the bond were held to cover persons having no contractual relationship with either the prime contractor or a subcontractor, as defined above, but only with a sub-subcontractor or with a sub-sub-subcontractor, it would usually be difficult if not impossible for the prime contractor to protect himself. The relationship between a sub-sub-subcontractor and a sub-subcontractor, is one of the `more remote relationships' referred to by the House Committee and by the Supreme Court in MacEvoy as not coming within the coverage of the bond. The bond required by the Miller Act protects only those who deal with the prime contractor or with a subcontractor. [cites omitted.]"
The court concluded:
"In the instant case the use-plaintiff, Newport News, did not deal directly with the prime contractor nor with a sub-contractor but with a sub-subcontractor, General Metals. It is therefore not entitled to recover under the bond."
The holding of the federal courts has been consistent that the Miller Act protects those who deal with prime contractors and those who deal with subcontractors of a prime contractor, but it does not protect those who deal with subcontractors of subcontractors of a prime contractor. See E.E. Elmer v. United States Fidelity & Guaranty Co., 5 Cir., 275 F.2d 89; Basich Brothers Construction Company v. United States, 9 Cir., 159 F.2d 182; Whitmore Oxygen Company v. Idaho Crane & Rigging Company, D.C., 193 F. Supp. 802; Aetna Insurance Company of Hartford Conn. v. Southern, Waldrip, etc., N.D.Cal., 198 F. Supp. 505. See also annotation appearing in 79 A.L.R.2d 855.
The one Florida case which sheds some light on the problem at hand is Troup Brothers, Inc. v. State, Fla.App. 1961, 135 So.2d 755. In Troup the defendant was the prime contractor on a state road project and the plaintiff was an unpaid lessor of digging equipment rented to one Dunlap who had used the equipment to remove marl for the defendant. Dunlap in turn, per contract with Troup, delivered the marl to the job site some seven or eight miles from the marl pit. The trial court rendered a judgment against Troup and its surety. In reversing the Second District Court of Appeal stated:
"Under the statute, if he were a materialman, general contractor defendant would not be liable to plaintiff, who would then occupy the status of supplier of a materialman and not afforded statutory protection. If, however, Dunlap be deemed a subcontractor, plaintiff would be protected by the statute. Since the evidence showed conclusively that Dunlap performed no work at the job site, we hold that he occupied the status of a materialman. Nowhere in the record is it shown that Dunlap contracted to perform or performed part of defendant contractor's contract. Such would have to have been the case for him to occupy the status of a subcontractor as that word is ordinarily defined. Thus, plaintiff is relegated to the position of materialman of a materialman which is excluded from the protection afforded by § 255.05, F.S.A., by the plain meaning of the language used therein. If the result were otherwise contractors purchasing supplies and materials incorporated in state construction projects would be subject to an endless chain of liability."
The Troup case can be cited for the proposition that a materialman of a materialman is excluded from the protection afforded by *704 § 255.05, supra. Although the issue involved in Troup is not identical to the facts at hand, we have not been convinced that the application of a different principle should obtain.
In the instant case Monmouth clearly occupied only the status of a materialman to Patterson. Patterson was the subcontractor to McDonald who in turn was a subcontractor of the prime contractor Rood. We are therefore of the view that Monmouth falls in the category of those persons whose relationship is too remote to be afforded statutory protection.
For the foregoing reasons the summary judgment below should be and is hereby affirmed.
Affirmed.
NOTES
[1] "Any person entering into a formal contract with the state * * * shall be required * * * to execute the usual penal bond, with good and sufficient sureties, with the additional obligations that such contractor shall promptly make payments to all persons supplying him labor, material and supplies, used directly or indirectly by the said contractor, or subcontractors, in the prosecution of the work provided for in said contract * * *." [Emphasis supplied.]