Michele GERGORA et al.,
Plaintiffs-Appellees,

v.

R. L. LAPP FORMING, INC.,
etc., Defendant,

Travelers Indemnity Co., etc.,
Defendant-Appellant.

No. 78–1673.

United States Court of Appeals,
Fifth Circuit.

June 18, 1980.

John Downing, Luther Cochrane, Fort Lauderdale, Fla., for defendant-appellant.

Kaplan, Dorsey, Sicking & Hessen, Joel V. Lumer, Steven Bloom, Howard S. Susskind, Robert A. Sugarman, Miami, Fla., for plaintiffs-appellees.

Before MORGAN, ANDERSON and RANDALL, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge.

Appellant Travelers Indemnity Co. appeals from a judgment holding it liable as surety for the default of R. L. Lapp Forming, Inc., subcontractor for a public construction project in Broward County, Florida. The plaintiffs-appellees are trustees of the Broward County Carpenters' Health & Welfare Pension, Vacation and Apprenticeship & Training Trust Funds. They brought this action in the United States District Court for the Southern District of Florida based on the labor organization dispute jurisdiction provided federal courts by 29 U.S.C. § 185.

In January 1975 the School Board of Broward County entered into an agreement with Edward L. Nezelek, Inc. for the construction of Coral Springs High School. Travelers issued a payment bond on the project for Nezelek pursuant to the requirements of Florida Statutes section 255.05.

As general contractor for the project, Nezelek gave a subcontract to R. L. Lapp Forming for all concrete form work at the construction site. R. L. Lapp Forming was a party to the collective bargaining agreement between the Broward County Carpenters' District Council and various regional construction associations. Among the provisions of the collective bargaining agreement was a requirement that every employer contribute a stated amount to the fringe benefit trust fund of which the appellees are trustees. The agreement further provided that if any employer should default on its obligation to contribute to the trust fund, the employer would bear additional liability for all reasonable attorneys fees and audit charges incurred by the trustees in collecting the unpaid contributions.

Early in the spring of 1975, R. L. Lapp Forming began to experience severe financial difficulties. In April, the company ceased all payments to the fringe benefits fund. Work continued, however, and by August 22, 1975, Lapp Forming owed the fund an accumulated debt of $16,642.11. On September 24, 1975, the trustees notified Nezelek, Travelers Indemnity and the School Board of Broward County that Lapp Forming had failed to make the trust fund contributions required by the collective bargaining agreement. After Nezelek failed to pay the debt of its subcontractor, the trustees initiated this lawsuit and named Lapp Forming, Nezelek, and Travelers Indemnity as defendants.

A default judgment was entered against Lapp Forming, and after a trial on the merits of the complaint against the remaining defendants, the district court entered its final judgment in favor of the trustees. On appeal, Travelers Indemnity contends that the trustees' written notice of Lapp Forming's default was tardy, precluding any suit against the general contractor and surety. Travelers Indemnity also contends that the district court's award of attorneys fees to the trustees was contrary to Florida law.

## I. NOTICE OF DEFAULT

The bond issued by Travelers Indemnity on the construction of the Coral

Springs High School was accepted by the School Board and general contractor Nezelek as the security required by law under section 255.05 of the Florida Statutes. Hence, all rights and obligations under the bond are governed by the statute. Unpaid suppliers of subcontractors on the bonded project may recover on the bond under subsection 255.05(2) provided they deliver written notice of nonpayment to the general contractor "within ninety days after performance of the labor or after complete delivery of materials and supplies." The delivery of ninety-day notice is a strict condition precedent to the maintenance of an action on the bond by any supplier. *Fuller Industries, Inc. v. R. Terry Blazier and Son, Inc.*, 188 So.2d 2 (Fla.Dist.Ct.App.1966).

The plaintiffs delivered written notice within ninety days of the last day on which labor was performed, but more than ninety days from the performance of much of the labor for which trust fund contributions are owed. The question thus framed is whether the statutory ninety day notice period should run separately for each day of labor, or whether the period should commence for all labor only after the last day of performance.

In the case of materials suppliers, the ninety day notice period commences for all sales after the supplier's last delivery of materials to the subcontractor. *Clutter Construction Corporation v. Baker Brothers*, 168 So.2d 576 (Fla.Dist.Ct.App.1964). Travelers Indemnity notes that the rule for materialmen is based on statutory language inapplicable to suppliers of labor. Section 255.05 states that notice must be within ninety days of "complete delivery" of materials, whereas the statute refers only to the "performance" of labor—and not *complete* performance—as beginning the ninety day period.

We regard this variation in phraseology within the same statute as more ambiguous than meaningful. The statute is subject to at least two reasonable interpretations. Either the qualification that delivery of materials must be "complete" creates a different rule for severable materials contracts than

for severable labor contracts, or it merely emphasizes that materials must be delivered to the construction site ready for use before the notice period begins to run. *See Board of Public Instruction v. Fidelity and Casualty Co.*, 184 So.2d 491 (Fla.Dist.Ct.App.1966).

In interpreting ambiguous statutory language, our task is to discover what interpretation will best accomplish the intention of the legislature. *Devin v. City of Hollywood*, 351 So.2d 1022 (Fla.Dist.Ct.App.1976). The Florida courts have recognized the purpose of section 255.05 to be "the protection of materialmen, laborers and the like, whose labor and materials are put into public works projects, upon which they can acquire no lien." *City of Fort Lauderdale v. Hardrives Co.*, 167 So.2d 339, 340 (Fla. Dist.Ct.App.1964). Being remedial in nature, the statute is entitled to a liberal construction. *Id.*

Because section 255.05 is intended to serve in lieu of the mechanic's lien remedy, the Florida courts have found it helpful to resolve inclarities by looking to the analogy of the Mechanic's Lien Law (Florida Statutes Ch. 713). *Miller v. Knob Const. Co.*, 368 So.2d 891 (Fla.Dist.Ct.App.1979). Section 713.08(5) of the Florida Statutes provides that a lien may be recorded at any time within "ninety days after the final furnishing of the labor." The notice provision of section 255.05 should be no more rigorous if the protection of the public construction bond is to be truly commensurate with that of a mechanic's lien, as it is intended to be.

The Florida courts have also sought interpretive aid in the example of the Miller Act, 40 U.S.C. §§ 270a *et seq.*, after which section 255.05 is modeled. *Board of Public Instruction v. Rood Const. Co.*, 166 So.2d 701 (Fla.Dist.Ct.App.1964). The ninety day notice period of the Miller Act begins "after the day on which the last of the labor was performed." Travelers Indemnity would conclude that since section 255.05 lacks this straightforward language, the Florida legislature must have intended a different rule. Had the Florida legislature followed the

Miller Act verbatim for all but the notice provision, this argument would carry greater weight. There is, however, a marked difference in style throughout the two laws. Since section 255.05 was intended to follow the general pattern of the Miller Act, we think it preferable to apply the Miller Act rule where the language of section 255.05 is at least compatible with the Miller Act. We hold that the district court correctly measured the notice period from the last day of labor.

■ Travelers Indemnity argues in the alternative that even if the notice period runs from the last day of labor, some individual laborers may have left the construction site more than ninety days before the giving of notice, and that contributions owed on their account can no longer be recovered on the bond. This contention was not introduced until the appellant's post-argument brief before this court. To decide the issue in favor of Travelers Indemnity at this stage would require that we remand the case for further proceedings to determine which if any laborers ceased working more than ninety days before the trustees' notice. The burden was on Travelers Indemnity to raise this matter as an affirmative defense in the district court. We decline to consider the argument on appeal.

■ Finally, Travelers Indemnity asserts that its principal, E. L. Nezelek, Inc., was entitled to the protection of certain notice of default provisions of the collective bargaining agreement between the Carpenters' District Council and Lapp Forming. Under the agreement, the trustees could hold any signatory "employer" liable for all fringe benefits accruing after written notice to the employer of its subcontractor's default. Although the trustees' cause of action is based on the payment and performance bond and section 255.05, rather than on the collective bargaining agreement, Travelers Indemnity contends that the trustees are *estopped* from seeking indemnity for their failure to pursue the alternative notice-giving remedy of the collective bargaining agreement.

In support of its argument Travelers Indemnity cites *Graybar Electric Co. v. John A. Volpe Construction Co.*, 387 F.2d 55 (5th Cir. 1967), and *United States v. James Stewart Co.*, 336 F.2d 777 (9th Cir. 1964), which recognized a defense of estoppel in Miller Act cases where the plaintiff had induced the general contractor to rely on the subcontractor's solvency, or was at fault in allowing the subcontractor to default.

In the case at bar, however, Travelers Indemnity is unable to point to any conduct by the trustees which induced Nezelek to rely on R. L. Lapp Forming's solvency. Travelers Indemnity concedes that Nezelek was not a party to the collective bargaining agreement and had no contractual right to immediate notification of default. More importantly, the district court found that Nezelek was fully informed by Lapp Forming's officers that Lapp Forming was unable to pay fringe benefit contributions as they became due. Travelers Indemnity does not dispute this finding. Nor does Travelers Indemnity point to any negligent or wrongful conduct which caused or permitted Lapp Forming to default in its obligations to the trustees. Under these circumstances, the defense of estoppel is inapplicable.

## II. ATTORNEYS FEES

The trustees' prayer for relief in this action included a claim for attorneys fees incurred as a cost of collecting fringe benefit fund contributions. The basis for this claim was a provision in the collective bargaining agreement holding the employer liable for collection costs in the event of default. After finding Travelers Indemnity liable for the base sum of $16,642.11, the district court awarded the trustees attorneys fees of $3,750.00.

Travelers Indemnity argues that the award of attorneys fees in this case exceeded the amount permitted under Florida law. Section 627.756(2) of the Florida Statutes provides for attorneys fees of not more than twelve and one-half per cent of the judgment in any suit on a payment and performance bond.

■ Section 627.756(2) offers a limited remedy to plaintiffs whose contractual rights do not include the right to attorneys

fees. If the plaintiff is entitled to attorneys fees under the terms of a contract to which he is a party, he may elect between the contractual or statutory remedy even if the contractual remedy will result in a higher award. *Joseph v. Houdaille-Duval-Wright Co.*, 213 So.2d 3 (Fla.Dist.Ct.App. 1968).

Travelers Indemnity protests that its principal, Nezelek, was not a party to the collective bargaining agreement, and that neither Nezelek nor Travelers Indemnity are bound by the attorneys fees provision. Nevertheless, the liability of Travelers Indemnity on the payment and performance bond encompasses attorneys fees owed by a remote subcontractor. Such is the result approved by federal courts construing the Miller Act. *United States ex rel. Carter Equip. Co., Inc. v. H. R. Morgan, Inc.*, 554 F.2d 164 (5th Cir. 1977). Compensation for attorneys fees is part of the consideration given in return for the laborers' services, *United States ex rel. Sherman v. Carter*, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957), and is insured by the surety's promise to pay all persons supplying labor. *United States ex rel. Carter Equip. Co., Inc., supra.*

The judgment of the district court is AFFIRMED.