**MIAMI VALLEY CARPENTERS DISTRICT COUNCIL HEALTH AND WELFARE FUND, et al., Plaintiffs,**

*v.*

**UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant.**

**No. C–3–82–333.**

United States District Court, S.D. Ohio, W.D.

April 20, 1984.

---

Jerry A. Spicer, Dayton, Ohio, for plaintiffs International Brotherhood of Electrical Workers, Local Union No. 82.

John R. Doll, Dayton, Ohio, for plaintiffs Miami Valley Carpenters Dist. Council Health and Welfare Fund and Miami Valley Carpenters Dist. Council Pension Fund.

R. Edward Tepe, Cincinnati, Ohio, for defendant.

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; CONFERENCE CALL SET

RICE, District Judge.

In this action, Plaintiffs, Miami Valley Carpenters District Council Health and Welfare Fund, Miami Valley Carpenters District Council Pension Fund and International Brotherhood of Electrical Workers, Local Union No. 82 ("Plaintiffs"), seek to enforce surety bonds issued by Defendant, United States Fidelity & Guaranty Company. This action was initiated in the Court of Common Pleas of Montgomery County,

Ohio. Defendant filed a petition for removal, removing the cause to this Court.

This action is before the Court on Stipulations of Fact (Doc. # 8) and the parties' cross motions for summary judgment, together with memoranda in support of and in opposition thereto (Docs. # 9, # 10, # 11, # 12 and # 13).

Miami Valley Carpenters District Council Health and Welfare Fund and Miami Valley Carpenters District Council Pension Fund ("Carpenter Funds") are trust funds organized for the benefit of the members of affiliated local unions. The Carpenter Funds were established pursuant to collective bargaining agreements between the affiliated unions and various employers performing work within the unions' geographical location. (Stipulations of Fact, ¶ 1). International Brotherhood of Electrical Workers, Local Union No. 82 ("Local 82") is an unincorporated labor organization. (Stipulations of Fact, ¶ 2). Defendant is a corporation organized under the laws of Maryland. (Petition for Removal, ¶ 3). Defendant is licensed to do business in Ohio, and its principal place of business is Baltimore, Maryland. (Stipulations of Fact, ¶ 3).

As a result of collective bargaining agreements between the Miami Valley Carpenters District Council of Dayton, Ohio, and Foreman General Contractors, a division of Foreman Industries, Inc. ("Foreman"), and Local 82 and Foreman, Defendant issued surety bonds [1] to Foreman. These bonds guarantee payments that the collective bargaining agreements require Foreman to make to the Carpenter Funds and Local 82. (Stipulations of Fact, ¶ 4).

During 1981, Foreman failed to make the required payments to the Carpenter Funds and Local 82. In October, 1981, Foreman commenced a voluntary proceeding in bankruptcy ("bankruptcy proceeding") under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court, Southern District of Ohio, Western Division. (Stipulations of Fact, ¶ 5). Plaintiffs and some of their members who were employed by Foreman have asserted claims against Foreman in the bankruptcy proceedings. (Stipulations of Fact, ¶s 7 and 8).

After negotiations, Foreman and its secured creditors, American Business Finance, Inc., National City Bank and First National Bank of Dayton, Ohio, reached an agreement, which purported to provide for the orderly liquidation of Foreman. In exchange for Foreman's agreement to cooperate and assist the secured creditors in the liquidation process, the secured creditors agreed to release Charles E. Foreman from liability for personal guarantees that he had given the secured creditors for loans the secured creditors made to Foreman. The secured creditors also agreed to assume responsibility for the payment of certain federal, state and local taxes which Foreman owed, thus relieving Charles E. Foreman of personal liability for the payment of those taxes. (Affidavit of Jerry Spicer, ¶ 4). Foreman and the secured creditors filed a joint application for approval of the settlement agreement in the bankruptcy proceedings. (Affidavit of Spicer, ¶ 5).

Objections to this settlement agreement were filed on behalf of wage and fringe benefit fund claimants ("priority claimants") including Plaintiffs. (Affidavit of Spicer, ¶ 6). As a result of the objections, Plaintiffs' attorneys as representatives of the priority claimants, entered into negotiations with the secured creditors. (Stipulations of Fact, ¶ 9; Affidavit of Spicer, ¶ 7). These negotiations resulted in the execution of the Amended Settlement Agreement ("Agreement") [2] between Foreman, the se-

---

1. The surety bonds are Exhibits A and B to the Stipulations of Fact.

2. The Amended Settlement Agreement is Exhibit C to the Stipulations of Fact. For present purposes, the key provisions of this agreement are ¶s 3C, 3D and 6A.

Paragraph 3C provides:

Lenders guarantee that the Priority Claimants will receive, out of the proceeds of liquidation of the collateral described above in Paragraph 3.A $360,000 (the "Total Settlement Amount"), which shall be paid by Lenders regardless of any other provisions of this Agreement relative to the payment of costs having priority or

cured creditors and Plaintiffs' attorneys, purportedly on behalf of all priority claimants. Under the terms of this Agreement, the priority claimants were assured of receiving $360,000 out of the proceeds of the liquidation of Foreman's assets. In exchange, the priority claimants agreed to support the secured creditors' proposed liquidation plan and to withdraw their requests for the appointment of a trustee.

In the Agreement, the priority claimants specifically reserved their rights to pursue the surety bonds to secure those portions of their claims for which they were not compensated as a result of the Agreement. Additionally, the Agreement provided for the complete payment of the priority claimants' claims in the event that the liquidation process would generate sufficient money. However, the parties have stipulated that, as a practical matter, the priority claimants will receive only $360,000 because the liquidation of Foreman's assets will not generate enough money to pay more. (Stipulations of Fact, ¶ 12).

Stated broadly, the central question herein is whether the Plaintiffs released the Defendant from its obligations under the surety bonds by entering into the Agreement. The Defendant argues that the Plaintiffs released Foreman from the debts owed the Plaintiffs by entering into the Agreement. This, the Defendant asserts, had the effect of releasing it (the Defendant) from its obligations under the surety bonds. *See, Gholson v. Savin*, 137 Ohio St. 551, 31 N.E.2d 858 (1941). Plaintiffs, on the other hand, argue that the Agreement did not release Foreman; consequently, Defendant remains obligated by the surety bonds. In the alternative, Plaintiffs contend that even if the Amended Settlement Agreement released Foreman, their express reservation rights, against Defendant, in the Amended Settlement Agreement, precludes the Defendant's release. *See, Restatement of Security*, § 122. Additionally, Plaintiffs assert that the Defendant has paid the claims of other priority claimants; consequently, Defendant cannot be allowed to act inconsistently by not pay-

any other payments or distributions provided this Agreement, but all payments to any wage claimants which make up a part of the claims of Priority Claimants shall be subject to all deductions required by law and Lenders shall pay those deductible amounts to the appropriate public authorities.

Paragraph 3D provides:

The Priority Claimants who have claims on bonds to secure all or portions of their claims, will be free to pursue these bonds and recover thereunder, without affecting such recoveries against the Total Settlement Amount, subject to the following conditions:

(1) The Lenders may notify each of the bonding companies who have executed bonds in favor of the Priority Claimants of the terms of this Settlement Agreement immediately after it has been approved by the Bankruptcy Court.

(2) Since the Lenders and Foreman Industries should only be required to pay once to either the claimants or any bonding company, if there is any dispute between such claimant and the bonding company, the amount due such claimant under this Settlement Agreement or the amount in dispute between such claimant and the bonding company, if less, will be turned over by Lenders to a court of competent jurisdiction, in an interpleader or similar action, or placed in escrow with an escrow agent acceptable to all parties and the bonding company. Such claimant and the

bonding company would then have the right to litigate over who had the better claim to such fund, without involving Lenders, Foreman Industries or Foreman.

Paragraph 6A provides:

The proceeds of recoveries on the collateral to be given to Foreman Industries shall be used by Foreman Industries for taxes due the Internal Revenue Service and various State and local governments and agencies in the State of Ohio, up to but not exceeding the sum of $1,984,000; and, thereafter, all recoveries in excess of this sum that would otherwise be due Foreman Industries shall be paid to Lenders until they receive $8,000,000; on any net recovery to Lenders in excess of $8,000,000, and up to $8,900,000, the unsecured creditors will receive 10%, and Lenders 90% thereof; but if the Lenders receive net proceeds of $8,900,000 from realization and recoveries on collateral, and there are excess proceeds above this sum available from the realization upon or liquidation of collateral, the Priority Claimants shall receive 20% of such excess proceeds required by law; and the surplus thereafter, if any, shall belong to Foreman Industries or other parties as provided by law. The Priority Claimants acknowledge that compliance with the terms of this Agreement fully satisfy their claims.

ing Plaintiffs. In the event that they prevail, Plaintiffs contend that they are entitled to attorneys' fees, interest and liquidated damages.

The Court must first decide whether the Plaintiffs released Foreman by entering into the Agreement. Defendant predicates its contention that it has been released from its obligations under the bonds on the assertion that the Agreement released Foreman. Therefore, if the Agreement did not release Foreman, then the Defendant remains obligated on the bonds.

 A release is a contract. *Picklesimer v. Baltimore & Ohio Rd. Co.*, 151 Ohio St. 1, 7, 84 N.E.2d 214 (1949). A release has been defined as:

> ... the giving up or abandoning of a claim or right to the person against whom the claim exists or against whom the right is to be enforced or exercised. It presupposes an obligation, which, as between private parties, is either contractual or tortious, or which has been reduced to judgment. The release itself, except where it constitutes a gift completely executed, is a contract.

15 O.Jur.3d, *Compromise, Accord and Release*, § 1 at 513. Whether a particular agreement constitutes a release is to be determined, as with all contracts, from the intent of the parties. *Id.* at § 37.

 After examining the Agreement, the Court can reach but one conclusion. The Agreement did not discharge the debt owed by Foreman. Consequently, Defendant is not relieved of its obligations under the surety bonds.

The Agreement to pay the priority claimants $360,000 did not release Foreman from its debt. Rather, the secured creditors agreed to guarantee payment of $360,000 to the priority claimants in exchange for the priority claimants' support of the Agreement and for the priority claimants agreement to forego proceedings against

Foreman under Chapter 7 of the Bankruptcy Code. Further, the Agreement contains no language which can be construed as express or implied release of Foreman's debt by the Plaintiffs. On the contrary, the Agreement obligated Foreman to pay all claims of all priority claimants in the event that the liquidation of Foreman's assets generates enough money.

Nonetheless, Defendant argues that, "by entering into the settlement agreement, the Plaintiffs have effectively released Foreman from any obligation to pay fringe benefits which exceeds $360,000." Defendant's Motion for Summary Judgment (Doc. # 10), at p. 2. In making this argument, Defendant relies on ¶ 12 of the Stipulations which provides:

> Counsel have the reasonable belief that although the settlement agreement provides the contingency for the Plaintiffs to receive full payment of their claims, it is extremely unlikely that such contingency will be met, and in reality they will receive only $360,000 thereunder.[3]

However, it is apparent from the language of the Agreement that this expected limitation on what the Plaintiffs will receive is not a result of any specific provision in the Agreement. Rather, it is a result of Foreman's bankruptcy and the fact that the secured creditors had claims to Foreman's assets that were superior to those of the priority claimants. The Agreement recites this fact, and the affidavit of Jerry Spicer supports the statement in the agreement. Defendant has presented no evidence, nor does it argue, that the priority claimants would have received more from Foreman had they not entered into the Agreement.

Based on the foregoing, the Court concludes the Agreement did not release Foreman from its obligations to the priority claimants.[4] Consequently, Defendant remains liable on the surety bonds.

---

3. This $360,000 is to be shared proportionately by all priority claimants, not just the Plaintiffs.

4. Because the Court concludes that the Plaintiffs did not release Foreman by entering into the

Agreement, it need not consider whether the Plaintiffs' reservation of rights against the bonding companies in the Agreement would allow the Court to impose liability on the Defendant had Plaintiffs released Foreman. Likewise, it is

Plaintiffs assert that in the event that the Court finds Defendant liable on the surety bonds, then they are entitled to attorneys' fees, interest and liquidated damages. Plaintiffs base this argument on § 502, 29 U.S.C. § 1132, and § 515, 29 U.S.C. § 1145 of the Employee Retirement Income Security Act (ERISA), as amended by the Multiemployer Pension Plan Amendment Act of 1980.

Section 502(g)(2),[5] 29 U.S.C. § 1132(g)(2) provides that in any action on behalf of a plan to enforce § 515, 29 U.S.C. § 1145, that results in a judgment in favor of the plan, the court shall award attorneys' fees, interest and liquidated damages. Section 515, 29 U.S.C. § 1145 [6], requires that every employer who is obligated to make contributions to a multiemployer plan make such contributions.

Plaintiffs argue that a surety stands in the place of its principal. Therefore, the argument continues, just as Foreman, the employer, would be liable for attorneys' fees, interest and liquidated damages, Defendant also should be liable for the same. Plaintiffs assert that trust funds will find themselves in just as precarious a position when a surety refuses to pay contributions for a defaulting employer as when the employer itself defaults.

Nonetheless, the Court concludes that § 515 does not apply to Defendant's obliga-

tions under the surety bonds. It is § 515 that triggers the availability of attorneys' fees, interest and liquidated damages under § 502(g)(2). The Court determines that Defendant is not liable, under § 502(g)(2), for attorneys' fees, interest and liquidated damages.

The Court's conclusion that § 515 does not apply to Defendant's obligations is based upon two grounds. First, § 515 refers to obligations of an "employer." The definition of the term "employer" under ERISA is broad.[7] However, it is not so broad as to include a surety who exercises no control over the employees benefit plan. Second, even assuming arguendo that Defendant is an "employer," § 515 applies only when an employer is obligated to make contributions either "under the terms of the plan" or "under the terms of a collectively bargained agreement." Defendant's obligations arise from the surety bonds rather than from the terms of the plan or a collective bargaining agreement.

Alternatively, Plaintiffs argue that Local 82 is entitled to an award of attorneys' fees because the surety bond in its favor contains a provision for the payment of attorneys' fees. Defendant does not challenge this. Rather, Defendant argues that this provision was not intended to cover the present situation where it is the bond claimants own behavior which gives

---

not necessary to address Plaintiffs' argument that Defendant may not be allowed to act inconsistently by paying some priority claimants but not paying Plaintiffs.

**5.** Section 502(g)(2) provides:

In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan—
(A) the unpaid contributions,
(B) interest on the unpaid contributions,
(C) an amount equal to the greater of—
 (i) interest on the unpaid contributions, or
 (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

**6.** Section 515 provides:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

**7.** Section 3(5), 29 U.S.C. § 1002(5) defines "employer" as:

... person acting directly as an employer, or directly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity.

rise to a legitimate defense for the surety. Herein, Defendant argues that it was Plaintiffs' own actions in the bankruptcy proceedings which gave rise to its legitimate defense of release.

The Court does not question that Defendant legitimately raised the defense of release. However, the fatal flaw in Defendant's argument is that the language of the bond does not provide for such a contingency. On the contrary, it states that a claimant shall not be liable "in any manner" for attorneys' fees. Accordingly, the Court concludes that Plaintiff Local Union 82 is entitled to an award of reasonable attorneys' fees.

Based on the foregoing, the Court sustains in part, and overrules, in part, Plaintiffs' motion for summary judgment. Plaintiffs' motion is sustained with respect to the Plaintiffs' claims that Defendant remains liable on the bonds and that Local Union 82 is entitled to an award of reasonable attorneys' fees. Plaintiffs' motion is otherwise overruled. Defendant's motion for summary judgment is overruled.

Having decided that Defendant is liable on the bonds and that Plaintiff Local Union 82 is entitled to an award of reasonable attorneys' fees, the Court must decide the amounts of Defendant's liability on the bonds and for attorneys' fees. There is not sufficient evidence before the Court to make these determinations. Accordingly, the Court has set a conference call at 8:20 a.m. on Wednesday, May 2, 1984, in order to discuss with the attorneys appropriate procedures for resolving these outstanding questions.