527 So.2d 257 (1988)
HARVESTERS GROUP, INC., et al., Appellants,
v.
WESTINGHOUSE ELECTRIC CORPORATION, Appellee.
No. 87-1740.
District Court of Appeal of Florida, Third District.
June 7, 1988.
Rehearing Denied July 19, 1988.
Cooper, Wolfe & Bolotin and Maureen E. Lefebvre and Marc Cooper, Miami, for appellants.
Tew, Jorden & Schulte and Jeffrey A. O'Keefe, Fort Lauderdale, for appellee.
Before BARKDULL, HUBBART and BASKIN, JJ.
BASKIN, Judge.
Harvesters Group, Inc. [Harvesters], a general contractor on a public construction contract, and Fidelity & Deposit Company of Maryland [Fidelity], its surety, appeal from a final judgment in favor of Westinghouse Electric Corporation [Westinghouse], a supplier for a subcontractor on the project, a police station.
Harvesters subcontracted the electrical work on the police station under construction with Classic Electric Corporation [Classic], an electrical subcontractor. Classic purchased materials from Westinghouse. The materials needed to complete the project were delivered prior to the end of *258 1983. Westinghouse sent notices of nonpayment on June 17, 1983, August 19, 1983, September 21, 1983, and October 26, 1983. In February 1984, subsequent to the completion and occupancy of the police station, three parking lot lights malfunctioned. The police department reported the problem to Classic, and at Classic's request, Westinghouse replaced the ballasts on the lights. On May 9, 1984, Westinghouse sent a notice of nonpayment to Harvesters. When it failed to receive payment, Westinghouse filed an action seeking to recover on Harvesters' bond. Finding that Westinghouse had complied with both notice provisions of section 255.05(2), Florida Statutes (1983),[1] and was entitled to recover on the bond, the trial court entered final judgment in its favor. After due deliberation, we hold that the ninety-day notice furnished to Harvesters and its surety did not comply with notice requirements of section 255.05(2). We reverse the final judgment.
Because section 713.01(14), Florida statutes (1987), precludes claimants from obtaining liens on public property, section 255.05(1) provides a claimant who is not in privity with the general contractor on a public construction project a right of action against the contractor and its surety for unpaid materials or labor. See W.G. Mills, Inc. v. M & MA Corp., 465 So.2d 1388 (Fla. 2d DCA 1985); Blosam Contractors, Inc. v. Joyce, 451 So.2d 545 (Fla. 2d DCA 1984); Gorman Co. of Ft. Lauderdale, Inc. v. Frank Maio Gen. Contractors, Inc., 438 So.2d 1018 (Fla. 4th DCA 1983); Miami-Dade Water & Sewer Auth. v. Progress Supply, Inc., 389 So.2d 253 (Fla. 3d DCA 1980); State v. Clutter Constr. Corp., 132 So.2d 21 (Fla. 3d DCA 1961), aff'd, 139 So.2d 426 (Fla. 1962). Before instituting a lawsuit, however, a claimant must comply with notice requirements of section 255.05(2).[2]W.G. Mills; School Bd. v. Fasano, Inc., 417 So.2d 1063 (Fla. 4th DCA 1982); Fuller Indus., Inc. v. R. Terry Blazier & Son, Inc., 188 So.2d 2 (Fla. 2d DCA), cert. denied, 194 So.2d 617 (Fla. 1966); see Gergora v. R.L. Lapp Forming, Inc., 619 F.2d 387 (5th Cir.1980). Cf. National Gypsum Co. v. Travelers Indem. Co., 417 So.2d 254 (Fla. 1982); Pinewood Plumbing Supply Co., Inc. v. Centennial Constr., Inc., 489 So.2d 216 (Fla. 3d DCA 1986).
In United States ex rel. Light & Power Utilities Corp. v. Liles Constr. Co., 440 F.2d 474 (5th Cir.1971), the court considered the purpose of the notice provision in 40 U.S.C.A. § 270b(a), a provision similar to section 255.05(2):[3]
The [Miller Act] provides a method by which those who supply subcontractors may protect themselves. The protection *259 must be invoked within ninety days of the last delivery of goods. The reason for such a limitation is obvious. Contractors should not be compelled to wait around with their liabilities unknown or unsettled for an indefinite length of time, at the convenience of those who may wish to give notice of a claim.
Liles Constr., 440 F.2d at 478. See 3 S. Rakusin, Florida Mechanics' Lien Manual ch. 32 (1987); see also Fasano, Inc., 417 So.2d at 1065 ("Section 255.05(2) protects the contractor and the contractor's surety from having to account to unknown suppliers and subcontractors by putting the burden on the claimants to advise the contractor and surety of their participation on the project and to advise if they are not promptly paid.")
Harvesters and Fidelity contend that Westinghouse's notice of October 26, 1983, was premature because Westinghouse delivered materials after that date. They argue that the notice must be delivered within ninety days after the final furnishing of labor, services and materials  not ninety days from substantial completion of performance. Under the plain language of the applicable statute, their position has merit.
[W]here the language in a statute clearly and unambiguously conveys legislative intent, it is unnecessary to resort to statutory construction. Courts should not depart from the plain language of the legislature. A second controlling principle of statutory construction is the rule that words of common usage should be construed in their plain and ordinary sense.
Seaboard System R.R. v. Clemente, 467 So.2d 348, 355 (Fla. 3d DCA 1985) (citations omitted). We direct our consideration, therefore, to section 255.05(2), which provides, in pertinent part:
A claimant who is not in privity with the contractor and who has not received payment for his labor, materials, or supplies shall, within 90 days after performance of the labor or after complete delivery of the materials or supplies, deliver to the contractor and to the surety written notice of the performance of the labor or delivery of the materials or supplies and of the nonpayment.
It is apparent from the plain and unambiguous language that the ninety-day notice must be delivered after delivery of materials is complete. Had the legislature intended the time to run from a substantially completed performance, it would have stated the law accordingly. See Coastal Caisson; Acadia Development Corp. v. Rinker Materials Corp., 419 So.2d 1142 (Fla. 3d DCA 1982), review denied, 431 So.2d 988 (Fla. 1983). Cf. 40 U.S.C.A. § 270b(a) (1986) (where a claimant must give written notice to the prime contractor within ninety days "from the date on which such person ... performed the last of the labor or furnished or supplied the last of the material for which such claim is made.") (Emphasis supplied); § 713.23(1)(e), Fla. Stat. (1987) (lienor required to serve written notice of nonpayment within ninety days of the failure to receive any payment due from delivery date for any materials); § 713.08(5), Fla. Stat. (1987) (claim of lien may be recorded at any time during the progress of the work but not later than ninety days after final furnishing of supplied materials). The record discloses, and the parties agree, that Westinghouse delivered materials to the project subsequent to October 26, 1983. We therefore agree that the October 26, 1983, notice to Harvesters and Fidelity was sent prior to complete delivery and thus did not meet statutory requirements.
Next, Harvesters and Fidelity maintain that the notice of May 9, 1984, was untimely because delivery of the materials had been furnished more than ninety days before the notice was sent and replacement ballasts did not extend the ninety-day notice period. Again, we agree. In Viking Builders, Inc. v. Felices, 391 So.2d 302 (Fla. 5th DCA 1980), the court considered the effect of repairs on the ninety-day notice required by Florida's Mechanics' Lien Statute, section 713.08(5), Florida Statutes (1979).[4]

*260 The majority rule is that, after the installation of fixtures or equipment in a building, later services in the nature of correction or repair are not regarded as a part of the installation so as to make the time within which to file under a mechanic's lien based on the original installation run from the time of performance of such later services. This rule is followed in Florida.
Viking Builders, 391 So.2d at 303 (notice of lien, required by section 713.08(5) to be recorded not later than ninety days after final furnishing of labor or materials, held defective; warranty to repair work does not constitute commencement of ninety-day period) (footnote omitted). See Finney v. Barber Block Plant, Inc., 183 So.2d 698 (Fla. 2d DCA 1966); Russell v. Danford, 139 So.2d 743 (Fla. 1st DCA 1962); see also United States v. Continental Ins. Co., 776 F.2d 962, 964 (11th Cir.1985). Here, after Classic completed installation of the project's parking lot lights, and the lights functioned properly, Classic passed inspection on its part of the project. It wasn't until later that several lights failed and the ballasts had to be replaced. The record clearly shows that the final delivery of materials occurred in 1983; Westinghouse's argument that its notice was delivered timely because it supplied replacement ballasts in February 1984 is contrary to law.
Accordingly, we hold that the notice of May 9, 1984, was not timely: delivery of three ballasts to replace defective ballasts already installed and operational occurred after the final delivery from which the time for computing notice commenced.[5]
Finally, we conclude that neither the October 1983 nor the May 1984 notice complied with the statute's directive.
Reversed.
NOTES
[1] Section 255.05(2), Florida Statutes (1983) provides:

(2) A claimant, except a laborer, who is not in privity with the contractor and who has not received payment for his labor, materials, or supplies shall, within 45 days after beginning to furnish labor, materials, or supplies for the prosecution of the work, furnish the contractor with a notice that he intends to look to the bond for protection. A claimant who is not in privity with the contractor and who has not received payment for his labor, materials, or supplies shall, within 90 days after performance of the labor or after complete delivery of the materials or supplies, deliver to the contractor and to the surety written notice of the performance of the labor or delivery of the materials or supplies and of the nonpayment. No action for the labor, materials, or supplies may be instituted against the contractor or the surety unless both notices have been given. No action shall be instituted against the contractor or the surety on the bond after 1 year from the performance of the labor or completion of delivery of the materials or supplies.
[2] The statute requires the claimant to deliver two notices: a forty-five-day notice of claimant's intention to look to the bond for protection and a ninety-day notice of nonpayment. The parties agree that Westinghouse complied with the forty-five-day notice requirement; at issue is whether Westinghouse complied with the ninety-day notice.
[3] Florida courts have been guided by federal decisions construing provisions of The Miller Act, 40 U.S.C.A. § 270a et seq. (1986), which are similar to section 255.05. E.g., Gorman Co. of Ft. Lauderdale, Inc. v. Frank Maio Gen. Contractors, Inc., 438 So.2d 1018 (Fla. 4th DCA 1983); Miller v. Knob Constr. Co., 368 So.2d 891 (Fla. 2d DCA), cert. denied, 378 So.2d 346 (Fla. 1979); Winchester v. Florida Elec. Supply, 134 So.2d 826 (Fla. 2d DCA 1961); Board of Pub. Instruction v. Rood Constr. Co., 166 So.2d 701 (Fla. 3d DCA 1964). Cf. Coastal Caisson Drill Co. v. American Casualty of Reading, Pa., 523 So.2d 791 (Fla. 2d DCA 1988).
[4] Florida Mechanics' Lien Law, ch. 713, Fla. Stat., aids in construing provisions of section 255.05. See Gergora v. R.L. Lapp Forming, Inc., 619 F.2d 387 (5th Cir.1980); W.G. Mills, Inc. v. M & MA Corp., 465 So.2d 1388 (Fla. 2d DCA 1985); Miller v. Knob Constr. Co., 368 So.2d 891 (Fla. 2d DCA 1979).
[5] Appellees rely on Clutter Constr. Corp. v. Baker Bros., 168 So.2d 576 (Fla. 1st DCA 1964), cert. denied, 173 So.2d 146 (Fla. 1965), to support their contention that delivery of the replacement ballasts commenced the ninety-day notice period. In Clutter, the court held that the materialman complied with § 255.05(2), Fla. Stat., by delivering notice of nonpayment within ninety days of delivery of items necessary to perform repair work required under both the contractor and subcontractor's agreement. The court suggested that the materialman was unaware that these items were to be used for repair work. The court stated: "there was nothing to alert the [materialman] to the possibility that it would not have the statutory 90-day period within which to notify [the contractor] if payment were not made." Clutter, 168 So.2d at 578. The court's concern that "a materialman would hesitate to furnish materials on credit to any subcontractor on a public project for fear that they might be used in repair work and that he might thus lose his lien," Clutter, 168 So.2d at 578, is not relevant in this case. In the present cause, Westinghouse checked the installed ballasts to determine the reason for the equipment failure, at Classic's request. Thus, Westinghouse was aware that these ballasts were replacement equipment. We agree that the legislature intended to protect the materialman and subcontractor as well as the general contractor, the owner, and the public; however, the purpose of the ninety-day notice would be largely defeated if commencement of the notice period correlated to the repair provisions required by the subcontractor's agreement.