William GREENBLATT and Peter N. Salzarulo, as Chairman and Co–Chairman, respectively and Trustees of the Joint Industry Board of the Plumbing Industry of the City of New York and Funds Administered by Joint Industry Board of the Plumbing Industry of the City of New York, Peter N. Salzarulo, in his capacity as President of Local Union No. 2 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL–CIO,

Peter N. Salzarulo, Individually and Local Union No. 2 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL–CIO, Plaintiffs,

v.

DELTA PLUMBING & HEATING CORP. and New York Surety Company, Defendants.

No. 89 Civ. 7759 (RWS).

United States District Court, S.D. New York.

April 7, 1994.

Kaming & Kaming, New York City, for plaintiffs (Joseph S. Kaming, Elizabeth C. Kaming, and Sean O'Donnell, of counsel).

Hollander & Associates, P.C., New York City, for defendant New York Sur. Co. (Michael R. Strauss, of counsel).

## OPINION

SWEET, District Judge.

Plaintiffs William Greenblatt and Peter N. Salzarulo as Chairman and Co–Chairman, respectively, and Trustees of the Joint Industry Board of the Plumbing Industry of the City of New York and Funds Administered by Joint Industry Board of the Plumbing Industry of the City of New York ("the Board"), Peter N. Salzarulo, in his capacity as President of Local Union No. 2 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL–CIO, Peter N. Salzarulo, individually, and Local Union No. 2 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL–CIO (collectively, the "Plaintiffs"), have submitted a proposed judgment purportedly in conformance with this Court's opinion of September 29, 1993, reported at 834 F.Supp. 86 (S.D.N.Y. 1993) (the "September 29 Opinion"). Defendant New York Surety Company ("New York Surety") objects to certain portions of the Plaintiffs' proposed judgment, and has submitted a proposed counter-judgment.

### Prior Proceedings

The parties, facts, and prior proceedings in this matter were discussed at length in prior opinions of this Court, familiarity with which is assumed. *See, e.g., Greenblatt v. Delta Plumbing & Heating Corp.*, 834 F.Supp. 86 (S.D.N.Y.1993); *Greenblatt v. Delta Plumbing & Heating Corp.*, 818 F.Supp. 623 (S.D.N.Y.1993). They will be described below only to the extent necessary for the resolution of this motion.

The Plaintiffs, who include guardians of various Employee Retirement Income Security Act of 1974 (ERISA) funds, brought suit in this Court against Delta Plumbing and Heating Corporation ("Delta") on November 30, 1989, and added the New York Surety as a named defendant in May 1990. Delta sought protection from its creditors by filing a voluntary petition in bankruptcy in March 1991, automatically staying the action against it pursuant to 11 U.S.C. § 362, leaving New York Surety as the sole defendant.

New York Surety's motion to dismiss the complaint was denied on April 9, 1993. *Greenblatt v. Delta Plumbing & Heating Corp.*, 818 F.Supp. 623 (S.D.N.Y.1993). In the April 9 Opinion, the Court determined that New York Surety was subject to the jurisdiction of the Court under ERISA, 29 U.S.C. § 1145 ("Section 1145").

The September 29, 1993 Opinion, issued after trial, concluded that "[j]udgment will be entered awarding to the Board the sum of $50,636.86 plus costs." *Greenblatt v. Delta Plumbing & Heating Corp.*, 834 F.Supp. 86, 93 (S.D.N.Y.1993). Argument on the present matter was heard on January 5, 1994, and was considered fully submitted as of that date.

### Facts

The Plaintiff's proposal provides for judgment in the principal amount of $50,638.86 as and for past benefit contributions for the period through to June 30, 1990, interest at 18% according to the CBA from March 5, 1990, liquidated damages in the amount of $33,421.65, disbursements of this action in the amount of $807.00, attorneys' costs in the amount of $73,963.25, and accounting costs in the amount of $3,650.00, amounting in total to $195,902.41.

The CBA provides, among other things, as follows:

16. *FRINGE BENEFITS PAID TO PLUMBING INDUSTRY BOARD:* The

Employer must pay the aforementioned Fringe Benefits, Supplemental Benefits and Contributions, Holiday Fund Benefits and Security Benefits to the Plumbing Industry Board as administrative and/or collection agency of the various trust funds herein mentioned.

\* \* \* \* \* \*

18. *FRINGE BENEFITS, FAILURE TO PAY:* In the event an Employer shall default in payment of fringe benefits provided for by the terms of this Agreement, it shall be considered the same as failure to pay wages, and all Employees shall not be permitted to work for any Employer who is delinquent in the payment of fringe benefits.

\* \* \* \* \* \*

20. *FRINGE BENEFITS, CONSE-QUENCES BECAUSE OF FAILURE TO PAY:* The failure of an Employer to pay all Fringe Benefits and Supplemental Benefits and Contributions shall have the same consequences as the failure of an Employer to pay the wages of Journeymen, Apprentices and Worker Trainees or to afford them the conditions of employment stipulated in this Agreement, and in addition, such Employer shall be liable for the payment of such Fringe Benefits with interest of 18% per annum plus liquidated damages of 20% of the amount owing and all costs including, but not limited to, reasonable audit and accounting expenses, witness costs, and attorney fees and court costs.

\* \* \* \* \* \*

22. *SURETY BOND TO GUARANTY PAYMENT OF FRINGE BENEFITS:* Each Employer shall furnish a bond of an agreed form by a Surety Company approved by the New York State Insurance Department to the benefit of the Joint Plumbing Industry Board to guaranty the payment of the Fringe Benefits herein mentioned, Security Benefits and any and all other benefits and contributions. The amount of the bond shall be in conformity with the action taken by the Joint Finance Committee of the Joint Plumbing Industry Board.

On January 29, 1990 a bond was executed and issued by New York Surety for the benefit of Delta as Principal and the Board as Obligee (the "Bond") on a form prepared by the Board in the penal sum of $80,000.00.

The Bond provides for:

(1) an amount equal to all required fringe benefits under the Collective Bargaining Agreement on all classifications of employees covered thereunder who are employed by the Principal; ... which amounts shall be due to the Obligee during the term of said Agreement, or written modification, renewal or extensions, or on such other dates or at such other times as may hereafter be agreed upon in writing between the Principal and the Obligee....

*Discussion*

The Plaintiffs argue that they are entitled to interest at 18%, liquidated damages, and costs including attorneys' fees for a number of reasons. First, they argue that ¶ 20 of the CBA, which prescribes the consequences to an employer ensuing from a failure to pay fringe benefits, is applicable to New York Surety.

In addition, the Plaintiffs argue that they are entitled to these costs pursuant to ERISA, 29 U.S.C. § 1132(g)(2) ("Section 1132(g)"), which provides:

"In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce [ERISA Section 1145] in which a judgment in favor of the plan is awarded, the court shall award the plan

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorneys' fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26...."

The Plaintiffs argue that, since the Court has previously found that New York Surety was an employer pursuant to 29 U.S.C. §§ 1002(5) and 1145 for purposes of jurisdiction, *Greenblatt v. Delta Plumbing & Heating Corp.*, 818 F.Supp. 623, 625–29 (S.D.N.Y. 1993), New York Surety should also be subject to the punitive provisions of the Bond and of Section 1132(g)(2).

■ In the September 29 Opinion, the Court determined liability against New York Surety based on the face of the Bond. Citing *Crisafulli Brothers, Inc. v. Clanton*, 128 A.D.2d 963, 512 N.Y.S.2d 927, 928 (1987), the Court stated that:

It is an established rule of law that the language of guaranty must be given its ordinary meaning. It is equally accepted law that the liability of a guarantor cannot be extended in the application of a guarantee beyond the clear agreement of the parties.

*Greenblatt*, 834 F.Supp. at 92.

As further determined by the Court, "the Bond is unambiguous, covering: an amount equal to all required fringe benefits." *Id.* at 91. Under the Bond, New York Surety's liability is limited to the fringe benefits set forth in the bond, which does not cover each item of damage recoverable from Delta under the CBA. The bond does not express the clear intent of the parties that, in addition to the fringe benefits listed in the CBA, New York Surety should be liable for all penalties assessable against Delta for a failure to pay fringe benefits. *See Davis Acoustical Corp. v. Hanover Ins. Co.*, 22 A.D.2d 843, 254 N.Y.S.2d 14, 16 (3d Dept.1964) ("[A] surety's liability is to be strictly limited by the scope and meaning of its agreement.... Absent more specific language, a surety should not be obligated to pay such extraneous charges as attorney fees for collection of claims.").

The Plaintiffs' argument pursuant to ERISA is likewise unavailing. In *Miami Valley Carpenters District Health & Welfare Fund v. U.S.F. & G.*, 590 F.Supp. 61 (S.D. Ohio 1984), the Court found liability against a surety on a benefits bond, but found that ERISA could not be a source of attorneys' fees against the surety. The Court stated that:

Plaintiffs assert that in the event that the Court finds Defendant liable on the surety bonds, then they are entitled to attorneys' fees, interest and liquidated damages. Plaintiffs base this argument on § 502, 29 U.S.C. § 1132, and § 515, 29 U.S.C. § 1145 of [ERISA]....

\* \* \* \* \* \*

Plaintiffs argue that a surety stands in the place of its principal. Therefore, the argument continues, just as Foreman, the employer, would be liable for attorneys' fees, interest and liquidated damages, Defendant also should be liable for same. Plaintiffs assert that trust funds find themselves in just as precarious a position when a surety refuses to pay contributions for a defaulting employer as when the employer itself defaults.

\* \* \* \* \* \*

[E]ven assuming arguendo that Defendant is an "employer," [Section 1145] applies only when an employer is obligated to make contributions either "under the terms of the plan" or "under the terms of a collectively bargained agreement." Defendant's obligations arise from the surety bonds rather than from the terms of the plan or a collective bargaining agreement.

*Miami Valley*, 590 F.Supp. at 66.

In the present case, this Court found that ERISA § 1145 gave it jurisdiction over New York Surety, but New York Surety's obligations to the Plaintiffs arise under the Bond, not under the CBA.

Neither *United States v. Carter*, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957), nor *Gergora v. R.L. Lapp Forming, Inc.*, 619 F.2d 387 (5th Cir.1980), support the Plaintiffs' position. *Gergora* determined the coverage of a payment bond issued pursuant to Florida statutory law, and is inapplicable to

the present case. *Carter* concerned the extent of liability of a surety on a payment bond required under the Miller Act[1] for persons supplying labor for the construction of federal public buildings. This case held only that the Miller Act did not limit recovery under the Act to wages.

Moreover, in *F.D. Rich Co. v. United States,* 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974), the Supreme Court held that the Miller Act does not provide for attorneys' fees to litigants under the payment bond provided thereunder.

Plaintiffs also argue, as did the plaintiffs in *Miami Valley,* that the purpose of Section 1145, to give employers an incentive to honor their contractual obligations to contribute and to facilitate the collection of delinquent accounts, indicates that Section 1132(g) should be applied against New York Surety. However, "Congress clearly intended [Section 1132(g) ] to be remedial; it arose out of an acute concern over the adverse impact of delinquencies on employee benefit plans and was intended to discourage failure to make payments when due." *Central States, Southeast & Southwest Areas Pension Fund v. Alco Express Co.,* 522 F.Supp. 919, 930–31 (E.D.Mich.1981).

██ Such a purpose does not apply to a surety, since a surety has no involvement with the hiring of labor or the payment of benefits. The penalties in Section 1132(g) are meant for employers, in the strict sense of the word.

Plaintiffs also argue that the common law of New York indicates that New York Surety is contractually liable to pay for attorneys' fees and liquidated damages because of their breach of contract by refusing to pay upon demand. The sole case they offer for this proposition is *Brainard v. Jones,* 18 N.Y. 35 (1858). However, the Court of Appeals in *Brainard* dealt solely with the issue of the award of interest after default by a surety.

██ Both the Plaintiffs and the Defendants agree that the Defendants are liable for interest from March 5, 1990, the date that New York Surety was notified of Delta's default, although they disagree on the applicable rate of interest. The Plaintiffs argue that the rate should be 18%, as contemplated by ¶ 20 of the CBA. As with the other items of damages that the Plaintiffs seek under the CBA, rather than under the Bond, the rate applicable under the CBA to employers does not apply to New York Surety.

In *Brainard,* the case cited by the Plaintiffs in support of their contention that sureties can be liable for costs beyond the penal amount of a bond, the court states that "when the time has come for [a surety] to discharge [his] liability, and he neglects or refuses to do so ... he should compensate the creditor for the delay which he has interposed. The legal measure of this compensation is interest on the sum which he ought to have paid from the time when the payment was due from him." *Brainard,* 18 N.Y. at 36–37.

*Brainard* is consistent with N.Y.Gen.Ob.L. § 7–301, which provides that "the amount recoverable from a surety shall not exceed the amount specified in the undertaking except that interest in addition to this amount shall be awarded from the time of default by the surety." The interest contemplated by G.O.L. § 7–301, however, is the statutory rate of interest, *see United States Capital Ins. Co. v. Buffalo & Erie County Regional Dev. Corp.,* 177 A.D.2d 949, 578 N.Y.S.2d 307 (4th Dept.1991), which is now set by N.Y.C.P.L.R. § 5004 at 9% per annum.

## Conclusion

Neither the language of the Bond, nor Section 1132(g), nor the common law of New York provide support for awarding liquidated damages or attorneys' fees in this case. Judgment will be entered against the Defendants in the principal amount of $50,638.86 as and for past benefit contributions, with interest at 9% from March 5, 1990, and such costs as are taxable under the rules of this Court. Submit judgment on notice.

It is so ordered.

---

**1.** The Miller Act, 40 U.S.C. §§ 270a *et seq.,* requires a government contractor to post a surety bond "for the protection of all persons supplying labor and material in the prosecution of the work provided for" in the contract.